[L.A. No. 31831. Aug. 23, 1984.]

THE PEOPLE ex rel.
SEAL BEACH POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF SEAL BEACH et al., Defendants and Respondents.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Richard D. Martland, Assistant Attorney General, Henry G. Ullerich, Deputy Attorney General, George W. Shaeffer, Jr., Silver, Kreisler, Goldwasser & Shaeffer and Silver & Kreisler for Plaintiffs and Appellants.

David P. Clishman and Carroll, Burdick & McDonough as Amici Curiae on behalf of Plaintiffs and Appellants.

Richards, Watson, Dreyfuss & Gershon, Mitchell E. Abbott, Gregory W. Stepanicich and John W. Holbrook for Defendants and Respondents.

Ira Reiner, City Attorney (Los Angeles), Frederick N. Merkin, Senior Assistant City Attorney, Molly B. Roff, Deputy City Attorney, George Agnost, City Attorney (San Francisco), and Burk E. Delventhal, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

KAUS, J.— The issue is whether the city council of a charter city must comply with the Meyers-Milias-Brown Act's (MMBA) (Gov. Code, § 3500 et seq.) "meet-and-confer" requirement (Gov. Code, § 3505) before it proposes an amendment to the city charter concerning the terms and conditions of public employment. We hold that the MMBA requirement must be met.

I

On March 8, 1977, the voters of the City of Seal Beach adopted three charter amendments.[1] These amendments had been put on the ballot by the

---

[1] The amendments affected two existing sections of the charter—912 and 913—and added a new section, 912.1. Sections 912 and 913 deal with disciplinary matters. Section 912.1 deals with strikes by public employees.

city council pursuant to its constitutional power to propose charter amendments (Cal. Const., art. XI, § 3, subd. (b)). One amendment required the immediate firing, subject to an administrative hearing procedure, of any city employee who participated in a strike; it also prohibited the city council from granting amnesty or otherwise rehiring any striking public employee.[2] The adoption of the amendments was certified by the city council on March 28, 1977, and became effective on that date.

Relators—several public employee unions and some of their officers—obtained leave to sue in quo warranto from the Attorney General.[3] A complaint was filed on September 20, 1977. It sought a writ of quo warranto declaring the charter amendments invalid by reason of noncompliance with the "meet-and-confer" requirement of Government Code section 3505.[4] It prayed that the trial court (1) issue a writ of quo warranto ordering that the amendments be stricken; (2) make an order declaring the charter additions and amendments null and void; and (3) declare that certain sections of the Charter of the City of Seal Beach remain in force as they existed before the amendments. The actions were held in abeyance by stipulation of the parties pending a final decision by this court in *San Francisco Fire Fighters* v. *Board of Supervisors* (1979) 96 Cal.App.3d 538 [158 Cal.Rptr. 145]. We eventually denied a hearing in that case.[5] The city then filed a general de-

---

[2]Since the substantive validity of the amendments is not before us, we do not quote or even summarize them at length. Suffice it to say that it is undisputed that they deal with "terms and conditions" of public employment.

[3]The propriety of the procedure is not questioned. (See *Oakland Municipal Improvement League* v. *City of Oakland* (1972) 23 Cal.App.3d 165, 168-169 [100 Cal.Rptr. 29].)

[4]Unless otherwise indicated, all statutory references are to the Government Code.

Section 3505 provides: "*The governing body of a public agency,* or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, *shall meet and confer in good faith regarding* wages, hours, and other *terms and conditions of employment* with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members *prior to arriving at a determination of policy or course of action.* [¶] 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent." (Italics added.)

[5]We had granted a hearing in *San Francisco Fire Fighters* on March 15, 1978, and held the case for our decision in *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249]. After that case was decided we retransferred *San Francisco Fire Fighters* to the Court of Appeal. We denied a hearing after that court filed its opinion.

murrer to the complaint, arguing that the city council had the absolute, unabridged constitutional authority to propose charter amendments to its electorate, which authority could not be impaired or limited by the requirements of the MMBA (Cal. Const., art. XI, § 3, subd. (b)).[6] The city's demurrer was based on the holding in *San Francisco Fire Fighters,* that San Francisco's Board of Supervisors did not have to meet and confer with employee representatives before proposing a charter amendment which, as here, concerned the terms and conditions of public employment.

The city's demurrer to the complaint was sustained and relators were given 30 days to amend. After they failed to do so, the matter was dismissed. Relators appeal.

II

Section 3505 of the MMBA requires governing bodies of local agencies to "meet and confer [with employee representatives] in good faith regarding wages, hours, and other terms and conditions of employment" and to "consider fully" such presentations made by the employee organizations. Section 3505.1 provides that if the representatives successfully reach an agreement, a nonbinding memorandum of understanding shall be jointly prepared.[7]

The meet-and-confer requirement means that "a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its

---

[6]The full text of article XI, section 3, follows: "(a) For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. The charter is effective when filed with the Secretary of State. A charter may be amended, revised, or repealed in the same manner. A charter, amendment, revision, or repeal thereof shall be published in the official state statutes. County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments. [¶] (b) The governing body or charter commission of a county or city may propose a charter or revision. *Amendment* or repeal *may be proposed by* initiative or by *the governing body.* [¶] (c) An election to determine whether to draft or revise a charter and elect a charter commission may be required by initiative or by the governing body. [¶] (d) If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail." (Italics added.)

[7]Section 3505.1 provides: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination."

final budget for the ensuing year." (§ 3505.) ■ "Though the process is not binding, it requires that the parties seriously 'attempt to resolve differences and reach a common ground.'" (*Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55, 61-62 [151 Cal.Rptr. 547, 588 P.2d 249], citing *Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 25 [129 Cal.Rptr. 126].)

The MMBA has two stated purposes: (1) to promote full communication between public employers and employees; and (2) to improve personnel management and employer-employee relations within the various public agencies. These purposes are to be accomplished by establishing methods for resolving disputes over employment conditions and by recognizing the right of public employees to organize and be represented by employee organizations. (§ 3500.) While the Legislature established a procedure for resolving disputes regarding wages, hours and other conditions of employment, it did not attempt to establish standards for the wages, hours and other terms and conditions themselves. Rather, it "set forth reasonable, proper and necessary principles which public agencies must follow in their rules and regulations for administering their employer-employee relations, . . ." (*Los Angeles County Firefighters Local 1014* v. *City of Monrovia* (1972) 24 Cal.App.3d 289, 295 [101 Cal.Rptr. 78].) Ambiguous language in section 3500 which seemingly leaves room for local legislation inconsistent with MMBA, has not been so interpreted. ■ "Although the Legislature did not intend to preempt all aspects of labor relations in the public sector, we cannot attribute to it an intention to permit local entities to adopt regulations which would frustrate the declared policies and purposes of the MMB Act." (*Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 491, 501-502 [129 Cal.Rptr. 893].) ■ Finally, the Legislature clearly intended that the MMBA apply to charter cities: a public agency under section 3501, subdivision (c) includes "every town, city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not."

■ The simple question posed by this case is whether the unchallenged constitutional power of a charter city's governing body to propose charter amendments may be used to circumvent the legislatively designed methods of accomplishing the goals of MMBA.

### III

Seal Beach argues that the meet-and-confer requirement of the MMBA is incompatible with the charter amendment provisions contained in article XI, section 3 of the California Constitution. (See fn. 6, *ante*.) It contends that

the central issue in this case is whether the Legislature may, by statute, restrict or qualify a right or power expressly reserved to a charter city by the Constitution. It points out—correctly—that this issue was squarely decided in its favor in *San Francisco Fire Fighters* v. *Board of Supervisors, supra,* 96 Cal.App.3d 538.

Article XI, section 3, subdivision (b), of the California Constitution does, of course, give the governing body of a charter city the right to propose charter amendments to the electorate; *San Francisco Fire Fighters* held that this right could not be abridged by the Legislature and that therefore the MMBA meet-and-confer requirement could not be enforced. The court stated that "[w]e discern . . . a clear purpose that when a county's, or city's, governing body shall find it to be in the public interest to propose a specific charter amendment for adoption by the electorate, it shall have the absolute and untrammeled right and duty to do so. Just as clearly appears a corollary intent that such charter amendment proposals, or the decision whether they be made at all, shall not be the product of bargaining and compromise between the public entity's representatives, and others." (*San Francisco Fire Fighters, supra,* 96 Cal.App.3d at p. 548.)

It is a truism that few legal rights are so "absolute and untrammeled" that they can never be subjected to peaceful coexistence with other rules. Thus in *Los Angeles County Civil Service Com.* v. *Superior Court, supra,* 23 Cal.3d at pages 65-66, we reconciled a charter provision which mandated that civil service rules be amended only after public hearings, with the meet-and-confer provisions of the MMBA, although under article XI, section 3, subdivision (a) the charter provision superseded all "inconsistent" laws. "We conclude that the meet-and-confer requirement can coexist with the charter-mandated hearing. We see no reason why the commission's integrity as a neutral administrator of the merit system would be jeopardized by its participating in bargaining sessions with union and management representatives." (*Id.* at pp. 65-66.)

The city, however, claims that the MMBA cannot be harmonized with its constitutional right to propose charter amendments. First, it asserts that any regulation which affects this right is invalid. Under this argument, the city's power to amend its charter is so absolute that it is irrelevant that a legislative enactment which purports to affect it, does not actually conflict with this power. ■ The law, however, is that a city's power to amend its charter can be subject to legislative regulation. (*District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 267 [144 Cal.Rptr. 442].) That case squarely held that "the regulation of the charter amendment process is a matter of statewide concern governed exclusively by general laws which

supersede conflicting provisions in a city and county charter." (*Id.* at p. 267.) Thus, the argument that the procedure for putting charter amendments on the ballot is sacrosanct and immune to legislative control has already been rejected. We agree with the holding in *District Election,* which makes this an a fortiori case: in *District Election* there was an actual conflict between a state statute—section 34459 of the Government Code— and the relevant charter provision concerning the number of signatures required to put an amendment on the ballot through the initiative process.[8] Section 3505 is, of course, far less intrusive. Cities function both as employers and as democratic organs of government. The meet-and-confer requirement is an essential component of the state's legislative scheme for regulating the city's employment practices. By contrast, the burden on the city's democratic functions is minimal.

Second, the city claims that any attempt to harmonize the meet-and-confer process with the procedure for proposing charter amendments rests on a misguided effort "to transmogrify this case into one involving 'pre-emption' of local regulations dealing with matters of statewide concern." We disagree. We are fully aware that the dichotomy to which the city refers—state preemption v. municipal affair—would, as such, become relevant only if relators had mounted an attack on the power of the city to enact the substance of the three charter amendments. As already noted (see fn. 2, *ante*), they have not done so. Yet there is an undeniable parallel between the issue in this case and issues which our courts face in connection with various aspects of the MMBA on an almost daily basis: to what extent is a constitutional grant of power so absolute, that it must remain totally unaffected by even the most vital legislative concerns? On this question the cases in which legislative enactments confront the municipal "home rule" rights of charter cities and counties (Cal. Const., art. XI, § 5) are indeed instructive.

If the city is correct and the MMBA cannot affect the city council's constitutional power to propose charter amendments, much law concerning the impact of the act on charter cities will have to be rewritten. Article XI, section 5, subdivision (b) of the California Constitution[9] permits city charters to provide for "the constitution, regulation and government of the city

---

[8]Needless to say, this case does not involve the question whether the meet-and-confer requirement was intended to apply to charter amendments proposed by initiative.

[9]"It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks

police force," and grants "plenary authority" to provide for "the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks, and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." What grant of power could sound more absolute? Yet in an unbroken series of public employee cases, starting with *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 289-295 [32 Cal.Rptr. 830, 384 P.2d 158] and ending for the time being with *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135, 140 [185 Cal.Rptr. 232, 649 P.2d 874], it has been held that a "general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, where the subject matter of the general law is of statewide concern." (*Professional Fire Fighters, supra,* 60 Cal.2d at p. 292.)[10] ■ Fair labor practices, uniform throughout the state, are a matter "of the same statewide concern as workmen's compensation, liability of municipalities for tort, perfecting and filing of claims, and the requirement to subscribe to loyalty oaths." (*Id.* at pp. 294-295.) With these precepts in mind, in *Professional Firefighters* we resolved a conflict between the statutory right of firemen to organize and the city's "charter provisions, ordinances and regulations" (*id.* at p. 290) in favor of the statute. In *Baggett* v. *Gates, supra,* 32 Cal.3d 128, we held it to be of no consequence that the Public Safety Officers' Procedural Bill of Rights Act (§§ 3300-3311) conflicted with and impinged on a charter city's power to determine the manner in which its employees could be removed and, generally, impinged "to a limited extent on the city's general regulatory power over the [police] department." (*Id.* at p. 138.) ■ ■ ■ ■ In the same vein, in *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492 [129 Cal.Rptr. 893], a charter city resolution purporting to exclude work hour schedules from the meet-and-confer process was held invalid.[11]

---

and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." (Cal. Const., art. XI, § 5, subd. (b).)

[10]*Professional Fire Fighters* was, of course, decided several years before 1970 when article XI of the Constitution was recast. Section 13 of the article provides, however, in relevant part: "The terms general law, general laws, and laws, as used in this Article, shall be construed as a continuation and restatement of those terms as used in the Constitution in effect immediately prior to the effective date of this amendment, and not as effecting a change in meaning." (See also *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 317 [152 Cal.Rptr. 903, 591 P.2d 1].)

[11]We emphasize that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. Thus there is no question that

All these cases involved actual conflicts between state statutes and city "law." ██ ██ ██ ██ No such conflict exists between the city council's power to propose charter amendments and section 3505. Although that section encourages binding agreements resulting from the parties' bargaining, the governing body of the agency—here the city council—retains the ultimate power to refuse an agreement and to make its own decision. (See *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 334-336 [124 Cal.Rptr. 513, 540 P.2d 609].)[12] This power preserves the council's rights under article XI, section 3, subdivision (b)— it may still propose a charter amendment if the meet-and-confer process does not persuade it otherwise.

We therefore conclude that the meet-and-confer requirement of section 3505 is compatible with the city council's constitutional power to propose charter amendments.

IV

██ The city asserts a separate and independent ground articulated in *San Francisco Fire Fighters* as a basis for affirmance of the trial court's judgment. *San Francisco Fire Fighters* held that section 3504 provides a charter city with an express exemption from the requirements of the MMBA. Section 3504 defines the scope of representation to include "all matters relating to the employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." The court in *San Francisco Fire Fighters* stated: "[T]he Legislature enacted Government

---

"salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws." (*Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at p. 317.) Nevertheless, the process by which salaries are fixed is obviously a matter of statewide concern and none could, at this late stage, argue that a charter city need not meet and confer concerning its salary structure.

[12]The logical consequence of the city's position is, actually, that the MMBA cannot be applied to charter cities at all. If a meet-and-confer session with the city council concerning contemplated charter amendments impinges on the council's constitutional power, what of salary ordinances? It is "firmly established that the mode and manner of passing ordinances is a municipal affair . . . and that there can be no implied limitations upon charter powers concerning municipal affairs." (*Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 776-777 [7 Cal.Rptr. 805].) If meeting and conferring on charter amendments is an illegal limitations on the city council's power, why is the same not true of any ordinance which affects "terms and conditions of public employment?"

Code section 3504 to provide that the Meyers-Milias-Brown Act's duty to 'meet and confer' did 'not include consideration of the merits [or] necessity . . . of any . . . activity provided by law . . . .' [Fn. omitted.] In the case at bench, proposal of charter amendments deemed appropriate by San Francisco's governing body was an activity provided by the highest law of the state, i.e., its Constitution. Under section 3504 consideration of the *merits* or *necessity* of such a proposal was *expressly* exempted from the 'meet and confer' requirements of the Meyers-Milias-Brown Act." (*Id.*, 96 Cal.App.3d at pp. 548-549.)

This interpretation of section 3504, however, differs from that of other courts, commentators and of this court. First, the qualifying language of section 3504 was adopted as part of the 1968 amendments "presumably as a protection against the expanded concept of bargaining which those amendments embraced—but its meaning is far from clear" (Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 750.) In *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 615-616 [116 Cal.Rptr. 507, 526 P.2d 971], we concluded that the language merely indicated the Legislature's intent to "forestall any expansion of the language of 'wages, hours and working conditions' to include more general managerial policy decisions." (See also *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach, supra,* 58 Cal.App.3d 492, 503-504.) If proposing charter amendments is an activity provided by law, so is just about every aspect of employer-employee relations in the public sector. As the Court of Appeal said in this case: "Taken to its logical extreme, this argument would lead to the conclusion that all employment proposals are exempt under the qualifying language of section 3504. This result is obviously untenable."

## VI

We conclude that the city council was required to meet and confer with the relators before it proposed charter amendments which affect matters within their scope of representation. The MMBA requires such action and the city council cannot avoid the requirement by use of its right to propose charter amendments.

We are satisfied that relators' action meets the requirement of section 1021.5 of the Code of Civil Procedure. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].) They are therefore entitled to recover attorney fees.

The judgment is reversed. The trial court is directed to enter an order overruling the demurrer and to award relators an appropriate amount for attorney fees.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.