TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

OPINION

of

DANIEL E. LUNGREN
Attorney General

CLAYTON P. ROCHE
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:
:
:

No. 93-410

AUGUST 4, 1993

---

The Fresno Police Officers Association ("FPOA") and the Fresno Firefighters, International Association of Firefighters Local 753 ("Local 753") have requested leave to sue the City of Fresno in quo warranto pursuant to section 803 of the Code of Civil Procedure to test the validity of a 1993 amendment to the Fresno City Charter which repealed the "eight-city formula" for setting salaries of policemen and firemen in the city.

DISPOSITION

Leave to sue is granted to test whether the 1993 amendment to the Fresno City Charter which repealed the "eight-city formula" for setting salaries of policemen and firemen in the city is invalid by reason of noncompliance by the city with the requirements of the Meyers-Milias-Brown Act.

STATEMENT OF FACTS

Since the mid-1950's the Fresno City Charter has contained an "eight-city formula" provision under which the city council is required to set the salaries for policemen and firemen based upon the average salaries paid to their counterparts in eight designated cities in California. The formula has been incorporated into memorandums of understanding ("MOUs") entered into between the city and the FPOA and Local 753 pursuant to the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510; "MMBA").

The MOUs between the city and the FPOA and Local 753 have also contained what are termed "zipper clauses." The zipper clauses provide:

"During the life of this Memorandum of Understanding, . . . shall either party desire to modify its terms or to meet and confer as to matters within the scope of representation not addressed in the Memorandum of Understanding, such party shall request in writing to meet and confer on the item, which item shall be specified in

1.                                                                                        93-410

writing. During the life of this Memorandum, either party may refuse such request without explanation if the item is directly related to or is an item directly considered herein, or if the item was included in a written proposal of either party during the meet-and-confer process which led to this agreement, and no unilateral action may be taken thereon after such refusal."

On May 29, 1992, after numerous "contacts" between the parties, the city filed a complaint for injunctive and declaratory relief seeking to require the FPOA and Local 753 to "negotiate in good faith" concerning the eight-city formula and for declaratory relief as to its rights under the MOUs in light of the zipper clauses. The trial court concluded that the zipper clauses were susceptible to the unions' interpretation, allowing them to refuse to meet and confer or negotiate with respect to the eight-city formula, but that the clauses were unconstitutional as so interpreted. The court stated in its order:

"The MOU's, as interpreted by Defendants, are in violation of Article XI, section 3, subdivision (b) of the California Constitution in that they permit defendants to decide if and when plaintiffs may propose a ballot measure to the voters concerning the repeal or amendment of charter section 809 during the life of the MOU's. This is an impermissible restriction on the constitutional prerogatives of the City under the California Constitution."[1]

The city council thereafter adopted a resolution proposing a charter amendment that would repeal the eight-city formula. The resolution was adopted without notice being given to the unions. The unions responded by requesting the city to meet and confer with them before submitting the charter amendment to the electorate; the city rejected the union's request.

On November 24, 1992, the unions filed a complaint for injunctive relief and a petition for a writ of mandate against the city to prohibit the holding of the election and to require the city to meet and confer and "bargain in good-faith." The court refused to restrain the holding of the election, but overruled the city's demurrer, and the city has filed an answer to the complaint and petition. On March 2, 1993, the voters approved the charter amendment repealing the eight-city formula. On April 5, 1993, the charter amendment was filed with the Secretary of State.

_____

[1]Section 3 of article XI of the California Constitution provides in part:

"(a) For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. The charter is effective when filed with the Secretary of State. A charter may be amended, revised, or repealed in the same manner. A charter, amendment, revision, or repeal thereof shall be published in the official State statutes. County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments.

"(b) The governing body or charter commission of a county or city may propose a charter or revision. Amendment or repeal may be proposed by initiative or by the governing body."

QUESTION OF FACT OR ISSUE OF LAW

Did the city fail to comply with the requirements of the MMBA with respect to possible alternatives to the eight-city formula so as to cause the charter amendment to be invalid?

ANALYSIS

Section 803 of the Code of Civil Procedure provides for the filing of an action in the nature of quo warranto. (*International Assn. of Fire Fighters* v. *City of Oakland* (1985) 174 Cal.App.3d 687, 693.) It authorizes the Attorney General to bring an action "in the name of the people . . . upon a complaint of a private party, against . . . any corporation . . . which usurps, intrudes into, or unlawfully holds or exercises any franchise within this state."

A city charter is such a franchise. It has long been held that the proper remedy to attack the validity of a city charter amendment is through a quo warranto action. (*People ex rel. Seal Beach Police Officers Association* v. *City of Seal Beach* (1984) 36 Cal.3d 591, 595; *Oakland Municipal Improvement League* v. *City of Oakland* (1972) 23 Cal.App.3d 165, 168-169.)[2]

In determining whether to grant leave to sue in quo warranto the Attorney General considers (1) whether the application has raised a substantial question of fact or issue of law which should be decided by a court and (2) whether it would be in the public interest to grant leave to sue. (76 Ops.Cal.Atty.Gen. 38, 39 (1993); 76 Ops.Cal.Atty.Gen. 1, 2 (1993).) Thus, "`"it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or questions of law that should be determined by a court."'" (72 Ops.Cal.Atty.Gen. 63, 69 (1989).

The MMBA requires that the governing body of a public agency, or its representatives, "shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of . . . employee organizations." (Gov. Code, § 3505.) It also provides that the governing body "shall give reasonable written notice to each recognized employee organization affected of any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation . . . and shall give such recognized employee organization the opportunity to meet and confer with the governing body . . . ." (Gov. Code, § 3504.5.)

In *People ex rel Seal Beach Police Officers Association* v. *City of Seal Beach, supra*, 36 Cal.3d 591, the question before the Supreme Court was whether a charter city was required to meet and confer with recognized employee organizations before proposing city charter amendments involving matters within the scope of representation. The court rejected the contention that the city council had the absolute right to submit charter amendments to the electorate without first consulting the unions. The court stated:

"The city, however, claims that the MMBA cannot be harmonized with its constitutional right to propose charter amendments . . . . Under this argument, the city's power to amend its charter is so absolute that it is irrelevant that a legislative enactment which purports to affect it, does not actually conflict with this power. The law, however, is that a city's power to amend its charter can be subject to legislative regulation. (*District Election, Etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d

---

[2]*Pulskamp* v. *Martinez* (1992) 2 Cal.App.4th 854, 859-860, while distinguishable on several points, must be viewed as consistent with this well established principle.

261, 267.) That case squarely held that `the regulation of the charter amendment process is a matter of statewide concern governed exclusively by general laws which supersede conflicting provisions in a city and county charter . . . .'" (*Id.*, at pp. 598-599.)

A quo warranto action is the proper method to test the validity of a city charter amendment. While peripheral issues may be decided in the pending lawsuits filed by the city and the unions, those actions were filed prior to the amendment of the charter and do not directly challenge the amendment's validity. Whether the amendment is valid or not presents substantial questions of fact and law with respect to the actions of the parties in complying with the provisions of the MMBA. Specifically, the issues here are whether the city was required to give notice to the unions prior to adopting the resolution proposing the charter amendment repealing the eight-city formula and whether it was required to meet and confer with the unions after the resolution was adopted. (Gov. Code, §§ 3504.5, 3505.)

This office has upon prior occasions granted leave to sue in quo warranto in charter amendment challenges similar to this. In *People ex rel. Seal Beach Police Officers Association* v. *City of Seal Beach, supra*, 36 Cal. 3d 591, for example, the complaint "prayed that the trial court (1) issue a writ of quo warranto ordering that the amendments be stricken; (2) make an order declaring the charter additions and amendments null and void; and (3) declare that certain sections of the Charter . . . remain in force as they existed before the amendments." (Id., at p. 595.) We granted the application for leave to sue to test whether the charter amendments were invalid by reason of noncompliance with the requirements of the MMBA, and the Supreme Court noted that "[t]he propriety of the procedure is not questioned." (Id., at p. 595, fn. 3.) We believe that *Seal Beach* governs here and that the same public interest and purposes are present: to resolve important questions of fact and law and to settle labor strife in the public sector. Accordingly, leave to sue is hereby granted.

\* \* \* \* \*