TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-802 |
| of | : | |
| | : | April 22, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| KARIM J. KENTFIELD | : | |
| Senior Assistant Attorney General | : | |
| | : | |
| NICOLE WELINDT | : | |
| Deputy Attorney General | : | |

The SAN DIEGO POLICE OFFICERS' ASSOCIATION has applied for leave to sue the CITY OF SAN DIEGO and the SAN DIEGO CITY COUNCIL in quo warranto. In a previous quo warranto lawsuit, the superior court invalidated San Diego City Charter provisions added by a 2012 ballot initiative, Proposition B. The Association contends that the earlier quo warranto judgment requires the City to restore pre-Proposition B benefits coverage in the San Diego Municipal Code.

The Association's proposed lawsuit meets all three of the Attorney General's criteria to grant leave to sue: quo warranto is the appropriate remedy; the application raises a substantial legal issue; and resolution of that issue would serve the public interest. Consequently, we GRANT leave to sue.

**BACKGROUND**

Although the legal remedy of quo warranto is commonly used to contest a person's entitlement to hold public office, it may also be used to challenge an amendment

1

24-802

to a city or county charter.[1]  This quo warranto application concerns an amendment to the San Diego City Charter that San Diego voters approved in 2012 through a ballot initiative titled "Proposition B."[2]  In 2021, a court declared Proposition B invalid in a previous quo warranto judgment.  The applicant is the San Diego Police Officers' Association, which represents city police officers holding the rank of captain and below.  The Association, which was not a party to the earlier suit, seeks to enforce the judgment against the City of San Diego and its City Council (collectively, the City) by requiring the City to restore a pre-Proposition B Municipal Code provision.  To put the requested relief in context, we begin by describing the charter amendment at issue and the history of related litigation.

Before Proposition B's enactment, City employees were generally eligible for a defined benefit pension plan.[3]  Proposition B provided that most new employees would instead receive a 401(k)-style defined contribution plan.[4]  The initiative amended the City Charter to add section 140, which stated that most City employees hired on or after the Proposition took effect would be eligible for a defined contribution plan only.[5]

The dispute here centers on the pension benefits of police recruits.  While City Charter section 140 excluded most new employees from the defined benefit plan, it included a carve-out for "sworn police officers," who remained eligible for the defined benefit plan.[6]  But because police recruits are not sworn officers until they graduate from the Police Academy, newly hired police recruits could no longer participate in the defined

---

[1] See, e.g., 103 Ops.Cal.Atty.Gen. 1, 4-5 (2020); 96 Ops.Cal.Atty.Gen. 1, 3 (2013); 76 Ops.Cal.Atty.Gen. 169, 169 (1993).

[2] See *Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 904-911 (*Boling I*).

[3] *Id.* at p. 904.  A defined benefit plan pays out based on factors such as income level, years of service at retirement, and age at retirement.  (See *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 748, fn. 4.)  A defined contribution plan, by contrast, pays out based on the value of the contributions made.  (See *ibid.*)

[4] *Boling I*, *supra*, 5 Cal.5th at pp. 904-907; see San Diego City Charter, art. IX, § 140 (effective July 20, 2012).

[5] *Boling I*, *supra*, 5 Cal.5th at pp. 903-907; see San Diego City Charter, art. IX, § 140, *supra* ("[A]ll Officers and employees, with the exception of sworn police officers, who are initially hired or assume office on or after the effective date of this Section shall participate only in such Defined Contribution Plans as authorized" by the City Charter).

[6] San Diego City Charter, art. IX, § 140, *supra* (authorizing the City Council "to enroll sworn police officers hired after the effective date of this section in either the Defined Benefit Plan or the Defined Contribution Plan").  Proposition B enacted other changes to the pension benefits of sworn police officers that are not at issue here.

24-802

benefit plan during their six months of Academy time.  To implement these changes, the City amended the San Diego Municipal Code to conform to section 140.[7]

Even before Proposition B was approved by voters, a coalition of municipal employee unions challenged its validity.[8]  The challenger unions, which did not include the Police Officers' Association, argued that the City had violated state labor law by failing to negotiate the pension issue with the unions before the measure was placed on the ballot.[9]  Under the Meyers-Milias-Brown Act (MMBA), "the governing body of a local public agency, or its designated representative" must "'meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of . . . recognized employee organizations.'"[10]  "The duty to meet and confer in good faith . . . requires the public agency to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse."[11]  A charter city such as San Diego must comply with the MMBA's meet-and-confer requirements before placing an initiative measure on the ballot that would affect matters within the Act's coverage.[12]

The challenger unions filed an unfair labor practice charge with the Public Employment Relations Board (PERB), a quasi-judicial administrative agency with "jurisdiction over complaints alleging unfair labor practices violating the MMBA."[13]  After Proposition B was enacted, PERB agreed with the unions that the City had violated the MMBA by failing to meet and confer with the unions before Proposition B was placed on the ballot.[14]  The City then challenged PERB's decision in court, and, ultimately, the California Supreme Court also concluded that the MMBA had been

---

[7] San Diego Ord. No. O-20376 (June 10, 2014); see San Diego Mun. Code, ch. 2, art. IV, div. 1, § 24.0103 (2014) (defining a "Safety Member" who is eligible for the defined benefit plan to include "a Police Department recruit employed by the City and participating in the City's Police Academy, *provided the recruit was initially hired by the City before July 1, 2013*," italics added and omitted).

[8] See *Boling I*, *supra*, 5 Cal.5th at pp. 908-909.

[9] See *ibid.*

[10] *Id.* at p. 913, quoting Gov. Code, § 3505, ellipsis in original.

[11] *Id.* at p. 914, internal quotation marks omitted.

[12] *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 602.

[13] *Boling I*, *supra*, 5 Cal.5th at p. 908; *County of Los Angeles v. Los Angeles County Employee Relations Commission* (2013) 56 Cal.4th 905, 916.

[14] See *Boling I*, *supra*, 5 Cal.5th at pp. 909-910.

3

24-802

violated.[15] The California Supreme Court remanded for the Court of Appeal to "address the appropriate judicial remedy" for the MMBA violation.[16]

On remand, the Court of Appeal held that to invalidate Proposition B, the challenger unions had to proceed in a quo warranto action.[17] As described above, quo warranto is a civil action used, among other purposes, to challenge an amendment to a city or county charter.[18] The Attorney General exercises a "gatekeeping role" by determining whether a proposed quo warranto lawsuit may proceed in court.[19] The unions thus applied for leave to file a quo warranto lawsuit contesting Proposition B's validity, and the Attorney General granted the application.[20]

In the ensuing quo warranto action, the superior court held that the City's violation of the MMBA rendered Proposition B invalid.[21] The court entered a judgment in 2021 declaring that sections of the City Charter added by Proposition B—including section 140—were "invalid, null and void."[22] The judgment "command[ed] the City and Its City Council" to "take all necessary steps within a reasonable period of time consistent with the procedures which govern its legislative actions, to comply with this Judgment by striking these 2012 Proposition B provisions from the City Charter and conforming the San Diego Municipal Code and any other related enactments accordingly."[23] The superior court retained jurisdiction "for the sole purpose of determining that the City has complied with the Judgment and the requirements set forth in the Writ."[24]

---

[15] See *id.* at pp. 903-904, 910.

[16] *Id.* at p. 920.

[17] *Boling v. Public Employees Relations Bd.* (2019) 33 Cal.App.5th 376, 381 (*Boling II*).

[18] See *ante*, fn. 1.

[19] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 619-620.

[20] See Cal. Atty. Gen., Indexed Letter, No. IL 19-404 (Aug. 15, 2019).

[21] *The People of the State of California ex. rel. San Diego Municipal Employees Association v. City of San Diego* (Super. Ct. San Diego County, Feb. 5, 2021, No. 37-2019-00051308-CU-MC-CTL) Judgment Pursuant to Code of Civil Procedure §§ 803-809 Invalidating City of San Diego's 2012 Proposition B Charter Amendments and Commanding by Writ in *Quo Warranto* That the City and Its City Council Strike These Invalid Amendments from Its Charter, at p. 5 (2021 Quo Warranto Judgment).

[22] *Ibid.*

[23] *Ibid.*

[24] *Ibid.*

4

In response to the ruling, the City and the Police Officers' Association met and conferred over the course of several years about unwinding Proposition B. The parties ultimately entered into an agreement with changes effective September 9, 2024. Relevant here, the agreement provided that newly hired police recruits would once again be eligible for the defined benefit pension plan during their Police Academy time. The City revised the San Diego Municipal Code to provide that a City employee eligible for the defined benefit plan includes "a Police Department recruit employed by the City and participating in the City's Police Academy, provided the recruit was initially hired by the City before July 1, 2013, or on or after September 9, 2024."[25]

Although the agreement restored access to the defined benefit plan for newly hired police recruits, it did not alter the pension benefits for those police recruits who entered the Police Academy between July 1, 2013, and September 9, 2024. The Association explains that the treatment of Academy time affects police officers for the rest of their career: after police recruits graduate from the Academy and enter the defined benefit plan as sworn officers, they will pay higher pension contributions in every paycheck than if they had joined the defined benefit plan while at the Academy, because pension contributions are lower when an employee joins the plan at a younger age. Because Proposition B has been invalidated, the Association contends that the City should restore the Municipal Code provision governing Police Academy recruits entering the Academy between July 1, 2013, and September 9, 2024, "to its pre-Proposition B language," as if the Proposition had never been enacted.[26]

In August 2023, before the City and the Association reached their agreement, the Association sued the City for declaratory relief and a writ of mandate.[27] The Association argued that the City had failed to comply with the quo warranto judgment because it had not fully unwound Proposition B's effects on the Municipal Code.

The superior court granted judgment for the City, concluding that the Association lacked standing.[28] "'A party seeking to pursue a Quo Warranto action in superior court,'" the court explained, "'must first obtain the Attorney General's consent to do so.'"[29] And "the Attorney General maintains the authority to control a *quo warranto*

---

[25] San Diego Mun. Code, ch. 2, art. IV, div. 1, § 24.0103, italics omitted. The City explains that July 1, 2013, is the date that the parties agreed Proposition B's changes would take effect.

[26] Proposed Complaint, Prayer ¶ 1.

[27] See *San Diego Police Officers Association v. City of San Diego* (Super. Ct. San Diego County, June 4, 2024, No. 37-2023-00033350-CU-JR-CTL) Minute Order, at pp. 1-2 (2024 Superior Court Order).

[28] *Id.* at p. 3.

[29] *Id.* at pp. 1-2.

5

action at all times, at any and every stage of the" proceeding—including post-judgment.[30] Applying those principles, the court held that the suit could not proceed because the Association had not obtained the Attorney General's permission. The court reasoned that had the Association "attempted to intervene in the original *quo warranto* action to enforce the Judgment," the Attorney General's permission would have been required, "because it would be part of 'the proceedings' over which the Attorney General maintains absolute and complete control."[31] To avoid circumventing the Attorney General's role in controlling how quo warranto litigation "proceed[s] in a post-judgment setting," the court granted judgment for the City.[32]

The Association then filed the application here, seeking the Attorney General's permission to sue the City and the City Council to enforce the quo warranto judgment. The Association alleges that the proposed defendants have failed to comply with the judgment because they have not unwound the effects of Proposition B on police recruits hired between July 1, 2013, and September 9, 2024.

While this application was pending, the superior court dismissed without prejudice the earlier quo warranto action holding that the City's violation of the MMBA rendered Proposition B invalid.[33] The City reports that all parties agreed dismissal was appropriate because the City had satisfied the quo warranto judgment invalidating Proposition B. The Association, which was not a party to that suit, maintains that the City has not fully satisfied the judgment given Proposition B's ongoing effects on police officer benefits.

---

[30] *Id.* at p. 2, internal quotation marks omitted; see Cal. Code Regs., tit. 11, § 8 ("The Attorney General may at all times, at any and every stage of the said proceeding, withdraw, discontinue or dismiss the same, as the Attorney General may seem fit and proper; or may, at the Attorney General's option, assume the management of said proceeding at any stage thereof"); *People ex rel. Southwest Exploration Co. v. City of Huntington Beach* (1954) 128 Cal.App.2d 452, 455 ("[I]t is well settled that the attorney general has control of [a quo warranto] action at all times"); *Cage, People ex rel., v. Petroleum Rectifying Co. of California* (1937) 21 Cal.App.2d 289, 291 (similar).

[31] 2024 Superior Court Order, *supra*, at p. 2.

[32] *Id.* at pp. 2-3.

[33] *The People of the State of California ex. rel. San Diego Municipal Employees Association v. City of San Diego* (Super. Ct. San Diego County, May 30, 2025, No. 37-2019-00051308-CU-MC-CTL), Minute Order, at p. 1 ("Counsel requests dismissal. The Court orders the entire action dismissed without prejudice").

6

24-802

**ANALYSIS**

Where a party seeks to pursue a quo warranto action in superior court, that party (the proposed relator) must apply for and obtain the Attorney General's consent.[34] In determining whether to authorize a quo warranto action, we do not attempt to resolve the merits of the controversy.[35] Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[36]

Here, the answer to all three questions is "yes." We therefore grant leave to sue.

## 1. Availability of the Quo Warranto Remedy

Quo warranto is a civil action used to challenge an amendment to a city charter, among other purposes.[37] Code of Civil Procedure section 803, which codifies the quo warranto remedy, provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state . . . upon a complaint of a private party . . . against any corporation . . . which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state." As a charter city, the City of San Diego is a public "corporation."[38] And "franchise" means "right" or "privilege" and includes a city charter.[39] Because quo warranto is available "to determine whether a public corporation is unlawfully holding or exercising a right or privilege ('franchise'), . . . it is an appropriate remedy by which to challenge the validity of the process by which a city or county charter was enacted or amended."[40] In the employment context, "an employee organization of a charter city, with the Attorney General's permission, may sue the city in

---

[34] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1228-1229.

[35] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879.

[36] *Ibid.*; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[37] See Code Civ. Proc., § 803; *ante*, fn. 1; *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 694.

[38] See 103 Ops.Cal.Atty.Gen., *supra*, at p. 4; *International Assn. of Fire Fighters v. City of Oakland*, *supra*, 174 Cal.App.3d at p. 694.

[39] 103 Ops.Cal.Atty.Gen., *supra*, at p. 4.

[40] *Ibid.*, internal quotation marks omitted; see 96 Ops.Cal.Atty.Gen. 36, 39 (2013); *International Assn. of Fire Fighters v. City of Oakland*, *supra*, 174 Cal.App.3d at p. 694 (the State delegates part of its sovereign power to public corporations, so when such corporations do not comply with state laws governing the lawmaking process, "they are usurping franchise rights as against [the] paramount authority" of the State); *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 920, fn. 3.

7

quo warranto to challenge the validity of a charter amendment on the ground that the city unlawfully exercised its franchise by placing the amendment on the ballot without first complying with the MMBA's consultation requirements."[41]

Here, the court in the earlier quo warranto suit declared Proposition B invalid because of the City's MMBA violation.[42] As explained above, however, the Association believes that the City has not fully complied with that judgment.[43] The Association therefore seeks to sue the City to obtain compliance. But the superior court ruled that the relief the Association seeks would be tantamount to enforcing the judgment in that earlier quo warranto suit, so the Association must first obtain the Attorney General's approval.[44]

Despite having prevailed in superior court on the argument that the Association must obtain the Attorney General's permission to proceed, the City now argues that quo warranto relief is not available. Because the Association was not a party before PERB, the City contends that there has been no finding that the City violated the MMBA as to the Association's rights. The City also argues that even if quo warranto were appropriate, the Association would need to intervene in the prior quo warranto lawsuit invalidating Proposition B, but the Association does not meet the legal standard for intervention. And given the prior action's dismissal, the City contends that there is no remaining suit in which the Association could intervene.

We decline to disagree with the superior court's conclusion that the Association must obtain the Attorney General's approval to enforce the 2021 quo warranto judgment. The superior court reasoned that the Association's claim "involves the post-judgment phase of a *quo warranto* action," the Association "is an interested person under the" earlier quo warranto judgment, and the Association "may not circumvent the law as to *quo warranto* actions" by proceeding without the Attorney General's permission.[45] Having carefully considered the superior court's reasoning and the authorities submitted by the City and the Association, we see no reason to disagree with the court's analysis in the circumstances of this case. The City may raise in court its various procedural

---

[41] 103 Ops.Cal.Atty.Gen., *supra*, at p. 4; see *Boling II*, *supra*, 33 Cal.App.5th at pp. 384-386; *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto*, *supra*, 102 Cal.App.5th at pp. 612-615; 96 Ops.Cal.Atty.Gen., *supra*, at pp. 1-3; 95 Ops.Cal.Atty.Gen. 31, 31-33 (2012).

[42] See 2021 Quo Warranto Judgment, *supra*, at p. 5 (commanding the City and City Council "to take all necessary steps . . . to comply with this Judgment by striking these 2012 Proposition B provisions from the City Charter and conforming the San Diego Municipal Code and any other related enactments accordingly").

[43] See *ante*, fns. 27-35 & accompanying text.

[44] See 2024 Superior Court Order, *supra*, at p. 2.

[45] *Ibid.*

8

24-802

arguments, including whether the Association may seek to enforce the quo warranto judgment in a separate lawsuit or must proceed by way of intervention, and whether the Association could satisfy the standards for intervention under the circumstances presented here. Those procedural issues involve fact-specific inquiries not suitable for resolution here.[46]

## 2. Substantial Issue of Law or Fact Warranting Judicial Resolution

We next examine whether the application presents a substantial issue of law or fact warranting judicial resolution. The Association seeks restoration of the pre-Proposition B Municipal Code provision relevant to the benefits of Police Academy recruits. The Association argues that the final judgment rendering "invalid, null and void" the City Charter sections added by Proposition B and commanding the City to "conform[] the San Diego Municipal Code . . . accordingly" requires returning that Code provision to the position it would have been in absent Proposition B. The City disagrees. It argues that the Association is not entitled to the restoration of pre-Proposition B benefits for any of its members on the ground that quo warranto judgments do not result in retroactive remedies.

We conclude that there is a substantial issue regarding the meaning of the prior quo warranto judgment. The superior court "command[ed] the City and Its City Council . . . to take all necessary steps . . . to comply with this Judgment by striking these 2012 Proposition B provisions from the City Charter and conforming the San Diego Municipal Code . . . accordingly."[47] The Association argues that the City has not done so, because the City has not fully restored the pre-Proposition B Municipal Code provision governing certain Police Academy recruit benefits. The Association has raised a substantial issue as to what the judgment requires, and we leave it to the superior court to interpret its own judgment.

In arguing to the contrary, the City invokes the de facto officer doctrine. The de facto officer doctrine holds that the "lawful acts" of "[o]ne who claims to be a public officer while in possession of an office," "if done within the scope and by the apparent authority of office," are "valid and binding," even if a court later concludes that the officer was unlawfully holding office at the time.[48] For example, if an officer were removed from office in a quo warranto action for not meeting the office's residency requirement, the de facto officer doctrine may prevent challenges to the officer's lawful

---

[46] For example, the timeliness standard for intervention under Code of Civil Procedure section 387 involves a "totality of circumstances" analysis considering "prejudice" and "the reason for the delay." (*Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal.App.5th 560, 574.)

[47] 2021 Quo Warranto Judgment, *supra*, at p. 5.

[48] *Ensher, Alexander & Barsoom, Inc. v. Ensher* (1965) 238 Cal.App.2d 250, 255.

9

acts taken before their removal.[49]  Allowing challenges to a removed officer's actions could have a "debilitating effect" on government operations by "plac[ing] in jeopardy many if not all of the actions taken by" the officer over an extended period of time.[50]  By barring such claims, the de facto officer doctrine protects "third persons" against "inconsistency, confusion and insecurity of rights."[51]

Beyond the context of public officials, the doctrine has also been applied to bar challenges to the actions of a municipal corporation that is later determined to have been illegally formed.  In *McPhee v. Reclamation Dist. No. 765*, a reclamation district sought to levy assessments on lands within the district "to pay the cost of reclamation work."[52]  A landowner refused to pay and sued the district in quo warranto, arguing that the assessment was invalid because the district itself was illegally organized.[53]  The California Supreme Court explained that the landowner would have to pay the assessment regardless of the outcome of the suit:  if the "reclamation district was a de facto corporation, a judgment in quo warranto, even though it should determine that the district had not been legally organized, would not annul or affect the acts performed by it before the judgment in quo warranto."[54]

Citing *McPhee*, the City contends that the Association cannot challenge the San Diego Municipal Code sections enacted to implement Proposition B.  A quo warranto judgment may invalidate a city charter amendment on a prospective basis, the City argues, but it cannot call into question the amendment's effects before it was declared unlawful.  In our view, there is at least a substantial question whether the de facto officer doctrine applies here.  Although courts have applied the doctrine to bar challenges to the otherwise-*lawful* acts of a municipal corporation where the entity lacked legal status at the time, the challenge here is not to the City of San Diego's lawful status.[55]  Instead, relators seek to enforce a judgment invalidating a Municipal Code provision enacted to

---

[49] See 108 Ops.Cal.Atty.Gen. 130, 135-137 (2025).

[50] *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 55-56 & fn. 26.

[51] *Ensher, Alexander & Barsoom, Inc. v. Ensher*, *supra*, 238 Cal.App.2d at p. 255.

[52] *McPhee v. Reclamation Dist. No. 765* (1911) 161 Cal. 566, 567-568.

[53] *Id.* at pp. 568-569.

[54] *Id.* at pp. 571-572.

[55] E.g., *Marine Forests Society v. California Coastal Com.*, *supra*, 36 Cal.4th at pp. 54-57 (doctrine barred retrospective challenge to Commission's actions based on claim that the officials had been unlawfully appointed); *McPhee v. Reclamation Dist. No. 765*, *supra*, 161 Cal. at pp. 571-572 (doctrine barred challenge to municipal corporation's tax assessments on the basis that the corporation had been illegally organized).

10

24-802

implement Proposition B, which was itself held *unlawful*.[56]  The City has not cited any authorities applying the de facto officer doctrine in the context of a challenge to a city charter amendment.  We need not attempt to resolve the merits of this dispute; we simply conclude that there is a substantial issue warranting judicial resolution.[57]

The court of appeal's decision in *People ex rel. International Association of Firefighters v. City of Palo Alto* further supports that conclusion.  There, the court evaluated the proper remedy in a quo warranto action related to an unlawful city charter amendment.[58]  The court acknowledged *McPhee* and the de facto officer doctrine.[59]  It nonetheless instructed the trial court "to issue an order that commands the city to restore the preamendment portion of article V of the city's charter, invalidates Measure D, and provides any other appropriate relief consistent with the views herein."[60]  A court may conclude that the *Palo Alto* court's decision to restore the pre-amendment charter language supports the Association's position here that a court could restore the pre-Proposition B Municipal Code language by enforcing the 2021 quo warranto judgment.

## 3. Public Interest in Favor of Authorizing Suit

Finally, we conclude that granting leave to sue will serve the public interest.  Generally, the existence of a substantial question of law or fact presents a sufficient "public purpose" to permit an action in quo warranto.[61]  That is particularly true here, where the dispute involves important public concerns such as public employee pensions and the application of state labor law.  The City argues that there are countervailing circumstances, such that the action is not in the public interest.  Taking each point in turn, we conclude that the City's considerations do not alter our conclusion.

First, the City reports that unwinding Proposition B for Police Academy recruits would cost at least $6 million.  The City argues that it would not serve the public interest for it to spend such a substantial sum when the quo warranto judgment does not require it to do so.  But the amount of money at stake only reinforces the importance of a judicial resolution to this dispute.  If a court ultimately concludes that the quo warranto judgment

---

[56] See San Diego Ord. No. O-20376, *supra* (explaining that the City had to amend the Municipal Code "to conform" to section 140).

[57] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879.

[58] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto*, *supra*, 102 Cal.App.5th at pp. 608, 616.

[59] *Id.* at p. 621, fn. 7.

[60] *Id.* at p. 627.

[61] E.g., 98 Ops.Cal.Atty.Gen. 94, 101 (2015); 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

24-802

requires the City to restore benefits, then it will serve the public interest for affected City employees to receive the benefits to which they are entitled.

Second, the City argues that it would not serve the public interest to grant leave to sue because only a "sector of [SDPOA]'s membership" remains affected by Proposition B. But resolving a legal issue may serve the public interest even where a relatively small number of individuals are affected. Indeed, we have previously granted leave to sue where only a specific group is affected.[62]

Third, the City contends that retroactively converting benefits could jeopardize the pension plan's tax status, triggering detrimental consequences for the City and its employees. The Association disagrees. To the extent the City has identified a "practical concern" with the requested relief, "we view it as a factor for the court to consider in fashioning [a] remedy, not as a bar to granting leave to sue."[63]

Finally, the City alleges that the Association failed to negotiate in good faith over the unwinding of Proposition B. The City filed an unfair practice charge with PERB over the Association's alleged bad faith, and PERB issued a complaint against the Association. The Association defends its negotiating practices. To the extent this fact-intensive dispute is material, the City will be free to raise it in court.[64]

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[62] See, e.g., 95 Ops.Cal.Atty.Gen., *supra*, at p. 31 (City of Bakersfield public safety officers); 96 Ops.Cal.Atty.Gen., *supra*, at p. 1 (City of San Jose police officers).

[63] 105 Ops.Cal.Atty.Gen. 101, 109 (2022).

[64] See 106 Ops.Cal.Atty.Gen. 151, 154 (2023) ("The superior court will be in a position to evaluate and weigh conflicting evidence and argument . . . in reaching its ultimate conclusion . . .").

24-802