[No. A122450. First Dist., Div. Five. Apr. 24, 2009.]

COUNTY OF SONOMA, Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
SONOMA COUNTY LAW ENFORCEMENT ASSOCIATION, Real Party
in Interest.

324

**COUNSEL**

Steven M. Woodside, County Counsel, Renne Sloan Holtzman Sakai, Jeffrey Sloan, Todd Simonson and Steve Cikes for Petitioner.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Mastagni, Holstedt, Amick, Miller, Johnsen & Uhrhammer, David P. Mastagni, Amanda S. Uhrhammer, Kathleen N. Mastagni, Isaac S. Stevens and David D. King for Real Party in Interest.

Altshuler Berzon, Stephen P. Berzon, Scott A. Kronland and Rebecca Smullin for Peace Officers Research Association of California Legal Defense Fund and California Professional Firefighters as Amici Curiae on behalf of Real Party in Interest.

## Opinion

**JONES, P. J.**—The County of Sonoma (the County) seeks relief from an order of the superior court compelling the County to arbitrate with real party in interest Sonoma County Law Enforcement Association (SCLEA) under the procedures established in Code of Civil Procedure section 1299 et seq.[1] In *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278 [132 Cal.Rptr.2d 713, 66 P.3d 718] (*Riverside*), the California Supreme Court held an earlier version of that statute unconstitutional, because the statute impermissibly infringed upon home rule powers reserved to local governments by article XI of the California Constitution. (*Riverside*, at p. 282.) The Legislature amended the statute in response to the Supreme Court's decision. But the County contends the amended version continues to intrude upon its constitutional authority to establish compensation and terms of employment for county employees. We agree with the County and will therefore grant its petition for writ of mandate.

### The Statutory Background

The County's challenge focuses on the constitutionality of section 1299 et seq., but that statute cannot be understood in isolation. Because this case concerns the collective bargaining process between local government agencies and public employee organizations, the Meyers-Milias-Brown Act (MMBA) (Gov. Code, §§ 3500–3510), is also relevant to our analysis. (See *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645] (*Voters for Responsible Retirement*).) We will therefore summarize the relevant provisions of the MMBA before setting out the history of current section 1299 et seq.

### The MMBA

The MMBA was enacted to "provid[e] a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500, subd. (a).) The MMBA covers employees of any "public agency," a term that embraces all municipalities and local governmental subdivisions of the state, including counties. (Gov. Code, § 3501, subds. (c), (d).) The statute grants public employees the right to form and join "employee organizations" for the purpose of representation on matters of employer-employee relations. (Gov. Code, § 3502.)

As pertinent here, the negotiation process established by the MMBA requires public agencies to meet and confer in good faith with representatives

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

of recognized employee organizations regarding wages, hours, and other terms and conditions of employment. (Gov. Code, § 3505.) If these meetings produce an agreement, the representatives of the parties must jointly prepare a written memorandum of understanding (MOU). (Gov. Code, § 3505.1.) The statute makes explicit, however, that the MOU "shall not be binding," but rather must be presented to the public agency's governing body "for determination." (Gov. Code, § 3505.1.) Once the governing body approves the MOU, "it then becomes binding on both parties." (*Voters for Responsible Retirement, supra*, 8 Cal.4th at p. 781.)

Government Code section 3505 states that the meet-and-confer process "should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent." Thus, if the parties reach an impasse in their negotiations, the public agency and the employee organization may agree to appointment of a mediator. (Gov. Code, § 3505.2.) In addition to mediation, the MMBA authorizes public agencies to adopt additional procedures for dispute resolution. (Gov. Code, § 3507, subd. (a)(5).) If after meeting and conferring in good faith, the parties have reached an impasse and exhausted any applicable impasse procedures, "a public agency that is not required to proceed to interest arbitration may implement its last, best, and final offer, but shall not implement [an MOU]." (Gov. Code, § 3505.4.) In those circumstances, the MMBA permits unilateral implementation of a public agency's last, best, and final offer.

### Senate Bill No. 402

In 2000, the Legislature adopted Senate Bill No. 402 (1999–2000 Reg. Sess.) (Senate Bill 402), which added title 9.5 to part 3 of the Code of Civil Procedure. (Stats. 2000, ch. 906, § 2, codified at Code Civ. Proc., § 1299 et seq.) As initially enacted, Senate Bill 402 provided for compulsory binding arbitration of labor disputes between employee organizations representing firefighters and law enforcement officers and the local agencies employing them.[2] Then as now, the statute provided that if in the course of labor negotiations, an employer and an employee organization reached an impasse over matters within the scope of arbitration, the employee organization (but

---

[2] For purposes of the statute, an employee is "any firefighter or law enforcement officer represented by an employee organization . . . ." (§ 1299.3, subd. (a).) "Employer" is defined as "any local agency employing employees, as defined in subdivision (a), or any entity, except the State of California, acting as an agent of any local agency, either directly or indirectly." (§ 1299.3, subd. (c).) A " '[l]ocal agency,' " in turn, is "any governmental subdivision, district, public and quasi-public corporation, joint powers agency, public agency or public service corporation, town, city, county, city and county, or municipal corporation, whether incorporated or not or whether chartered or not." (§ 1299.3, subd. (f).)

not the employer) could request referral of the dispute to an arbitration panel. (§ 1299.4, subd. (a).) Economic issues, including salaries, wages, benefits, and all other forms of remuneration, fall within the scope of arbitration. (§ 1299.3, subd. (g).)

The arbitration panel established by Senate Bill 402 consists of three members, with the employer and the employee organization each choosing one member, who then designate "an impartial person with experience in labor and management dispute resolution to act as chairperson of the arbitration panel." (§ 1299.4, subd. (b).) Once selected, the arbitration panel is empowered to meet with the parties or their representatives, to make inquiries and investigations, to hold hearings, and to take any other action the panel deems appropriate. (§ 1299.5, subd. (a).) The panel also has broad authority to subpoena witnesses, administer oaths, take testimony, issue subpoenas duces tecum and to require the production of the parties' records, books, and papers. (§ 1299.5, subd. (b).)

Prior to the panel's hearings, each of the parties is required to submit its "last best offer of settlement as to each of the issues within the scope of arbitration . . . ." (§ 1299.6, subd. (a).) After conclusion of the hearing, the panel decides the disputed contract issues by selecting, without modification, the last best offer "that most nearly complies with" a list of "factors traditionally taken into consideration in the determination of those matters within the scope of arbitration . . . ."[3] (§ 1299.6, subds. (b), (c).) The statute provides that the panel must then deliver its decision to the parties, but the decision is not to be publicly disclosed for a period of five days, during which time the parties may meet privately and amend or modify the decision by mutual agreement. (§ 1299.7, subd. (a).) Under the original version of the statute, the panel's decision was made public at the conclusion of the five-day period and automatically became binding on the parties. (Former § 1299.7, subd. (b), as enacted by Stats. 2000, ch. 906, § 2.) The statute empowers the arbitration panel to have the decision made part of any existing MOU. (§ 1299.7, subd. (b).)

### County of Riverside v. Superior Court

In 2003, the California Supreme Court declared Senate Bill 402 unconstitutional. (*Riverside, supra*, 30 Cal.4th at pp. 282, 296.) The high court determined that the legislation violated two separate sections of article XI of

---

[3] This type of procedure is known as "interest arbitration" in labor law. We discuss the nature of this type of arbitration in part II.D.1., *post*.

the California Constitution (article XI). (30 Cal.4th at p. 282.) The court held that the statute violated section 1, subdivision (b) (section 1, subdivision (b)) of that article, which states that a county's " 'governing body shall . . . provide for the . . . compensation . . . of its employees.' " (30 Cal.4th at p. 289.) It further held that the legislation was inconsistent with section 11, subdivision (a) of article XI (section 11, subdivision (a)), which provides that " '[t]he Legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county . . . money, . . . or perform municipal functions.' " (30 Cal.4th at p. 291.)

The Supreme Court held that Senate Bill 402 contravened section 1, subdivision (b) of article XI "by compelling [the county] to submit to binding arbitration of compensation issues." (*Riverside, supra,* 30 Cal.4th at p. 285.) The court explained that the language of section 1, subdivision (b) clearly provides that "the *county,* not the state, not someone else, shall provide for the compensation of its employees." (*Riverside,* at p. 285, original italics.) The statute violated section 1, subdivision (b) because it "permits the union to change the county's governing board from the body that sets compensation for its employees to just another party in arbitration . . . [and] thereby deprives the county of the authority section 1, subdivision (b), specifically gives to counties." (*Riverside,* at p. 285.)

The court rejected the notion that the statute could be upheld because it involved a matter of statewide concern. (*Riverside, supra,* 30 Cal.4th at pp. 286–289.) It acknowledged that "the Legislature may regulate as to matters of statewide concern even if the regulation impinges 'to a limited extent' [citation] on powers the Constitution specifically reserves to counties (§ 1) or charter cities (§ 5)." (*Riverside,* at p. 287.) But the court distinguished two prior decisions in which it had upheld such statewide regulation—*Baggett v. Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874] and *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145] (*Seal Beach*)—because the statutes challenged in those cases had imposed only procedural requirements. (*Riverside, supra,* 30 Cal.4th at pp. 287–289; see *Seal Beach, supra,* at pp. 597–601 [meet-and-confer requirement of Gov. Code, § 3505 does not conflict with charter city's authority to propose charter amendments under Cal. Const., art. XI, § 3, subd. (b)]; *Baggett v. Gates, supra,* at pp. 137–139 [Gov. Code, §§ 3300–3311, establishing basic rights and protections for peace officers, does not violate charter cities' power under Cal. Const., art. XI, § 5 to regulate police force and to provide for compensation, qualifications, or removal of employees].) Senate Bill 402, in contrast, was substantive and not procedural, because it took away from counties the authority to establish local salaries and gave that power to an arbitration

panel. (*Riverside, supra,* 30 Cal.4th at pp. 288–289.) Unlike the statute at issue in *Seal Beach,* under Senate Bill 402, the county's governing body did not " 'retain[] the ultimate power to refuse an agreement and to make its own decisions.' " (*Riverside,* at p. 289, quoting *Seal Beach, supra,* at p. 601.)

The *Riverside* court also ruled that Senate Bill 402 was inconsistent with section 11, subdivision (a). (*Riverside, supra,* 30 Cal.4th at p. 291.) The court agreed that "the Legislature has impermissibly delegated to a private body— the arbitration panel—the power to interfere with county money (by potentially requiring the county to pay higher salaries than it chooses) and to perform municipal functions (determining compensation for county employees)." (*Ibid.*)

Once again, the court rejected the argument that the Legislature could delegate the authority to set compensation to the arbitration panel because the delegation involved a matter of statewide concern. (*Riverside, supra,* 30 Cal.4th at pp. 291–293.) The court concluded that because section 1, subdivision (b) of article XI states that the county shall provide for employee compensation, "compensating county employees is a municipal function," rather than a statewide concern. (*Riverside,* at p. 292; accord, *id.* at p. 300 (conc. opn. of George, C. J.) [compensation of county employees is "a quintessentially local question"].) As a consequence, "establishing compensation for its employees is for the county to do, and section 11, subdivision (a), prohibits the Legislature from delegating that function to a private body." (*Riverside,* at pp. 292–293.)

*Senate Bill No. 440*

The Legislature responded to the decision in *Riverside* by adopting Senate Bill No. 440 (2003–2004 Reg. Sess.) (Senate Bill 440). (See Stats. 2003, ch. 877.) Senate Bill 440 amended section 1299.7, subdivision (b) and added a new subdivision (c) to that section. (See Stats. 2003, ch. 877, § 1.) Amended subdivision (b) now provides: "At the conclusion of the five-day period, which may be extended by the parties, the arbitration panel's decision, as may be amended or modified by the parties pursuant to subdivision (a), shall be publicly disclosed and, *unless the governing body acts in accordance with subdivision (c),* shall be binding on all parties, and, if specified by the arbitration panel, be incorporated into and made a part of any existing memorandum of understanding as defined in Section 3505.1 of the Government Code." (§ 1299.7, subd. (b), amendment in italics.) New subdivision (c) provides: "The employer may by unanimous vote of all the members of the governing body reject the decision of the arbitration panel, except as specifically provided to the contrary in a city, county, or city and

county charter with respect to the rejection of an arbitration award." (§ 1299.7, subd. (c).)

In enacting Senate Bill 440, the Legislature declared that its intent was to "[m]ake Title 9.5 (commencing with Section 1299) of Part 3 of the Code of Civil Procedure consistent with the decision of the California Supreme Court in County of Riverside v. Superior Court (2003) 30 Cal.4th 278 [132 Cal.Rptr.2d 713, 66 P.3d 718]." (Stats. 2003, ch. 877, § 3(b)(4).)

PROCEDURAL HISTORY

Petitioner is a general law county and is a "public agency" within the meaning of the MMBA. (Gov. Code, § 3501, subd. (c).) SCLEA is the exclusive employee representative of County employees with job classifications in certain law enforcement categories. The County and SCLEA were previously parties to an MOU governing wages, hours, and other terms and conditions of employment for SCLEA's membership. That MOU expired by its terms on June 18, 2007. Prior to its expiration, the parties began negotiations over a new agreement. They were unable to agree on the terms of a successor MOU, and SCLEA declared an impasse in the negotiations in May 2007.

The parties then proceeded to impasse mediation in accordance with the County's employee relations policy. After a number of mediation sessions, the parties were still unable to reach an agreement. On August 17, 2007, the County submitted its last, best, and final offer to SCLEA, but SCLEA's members voted to reject it. Further mediation likewise failed to yield an agreement, and on November 13, 2007, SCLEA formally requested that mediation be closed.

On November 19, 2007, SCLEA made a written request to submit the dispute to interest arbitration. The County denied the request on December 4, 2007, and expressed its view that the interest arbitration provisions of section 1299 et seq. represented an unconstitutional delegation of municipal power to private persons and an illegal impingement on the County's plenary authority over the terms and conditions of county employment. SCLEA later renewed its request for interest arbitration. The record is not entirely clear as to how the County responded to this request, if it responded at all, but it is apparent that the County refused to proceed to arbitration.

The County then notified SCLEA that it would submit a resolution to the County's board of supervisors asking the board to implement unilaterally the terms of the County's last, best, and final offer. The board adopted the resolution on January 8, 2008.

On January 25, 2008, SCLEA filed in the superior court a petition to compel arbitration pursuant to section 1299 et seq. The County opposed the petition to compel arbitration and filed its own cross-complaint seeking declaratory relief. The first cause of action of the County's cross-complaint sought a declaration that section 1299 et seq. are unconstitutional because the statute "vest[s] in a private body, rather than a duly elected legislative body, the power to set the terms and conditions of county employment."[4] SCLEA answered the County's cross-complaint, and both parties filed cross-motions for judgment on the pleadings.

The County's principal argument below was that section 1299 et seq. impinged substantially on its exercise of home rule powers guaranteed by section 1, subdivision (b) and section 11, subdivision (a) of article XI. It noted that the California Supreme Court had declared an earlier version of the statute unconstitutional in *Riverside*, and asserted that the amended statute continued to infringe impermissibly on the County's authority to "provide for" the compensation of its employees. The County further argued that the statute (1) impermissibly delegated the municipal function of setting compensation to a private body, (2) interfered with the board of supervisors' ability to meet its obligations under the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), and (3) interfered with county money by imposing on the County the expense of participating in the interest arbitration proceedings.

The parties stipulated to having SCLEA's petition and the issues raised in the County's cross-complaint decided in a single proceeding. The superior court held a hearing on the petition and the parties' motions for judgment on the pleadings on July 16, 2008. After receiving additional briefing from the parties, on August 1, 2008, the superior court issued an "Order on Submitted Matter." The order granted SCLEA's motion for judgment on the pleadings and denied the County's cross-motion as to the County's first cause of action.[5] The superior court ruled that section 1299 et seq. were constitutional. It acknowledged that the process imposed by the statute "is procedurally demanding" but concluded that the County's board of supervisors could convene and vote within five days to reject the arbitration panel's award. The court stated, "if the arbitrator's decision is indeed rejected, the governing body is free to proceed with a determination of the compensation issue." The court therefore ordered the County to submit to arbitration.

---

[4] The County's second and third causes of action sought judicial declarations that SCLEA should be equitably estopped from pursuing interest arbitration and that if the County were compelled to proceed to arbitration, it would be appropriate for the County to "roll back" all the terms of its unilateral implementation, including wage increases, before going to arbitration.

[5] The superior court also denied the County's motion as to the County's second cause of action and granted the County's motion as to its third cause of action. The court's rulings on those causes of action are not before us.

The superior court granted a temporary stay of its decision until further order from this court on the County's petition for writ of mandate. The County filed its petition in this court on August 25, 2008. The following day, we issued a temporary stay of the superior court's August 1, 2008 order and directed SCLEA to submit a preliminary opposition to the petition, to which the County was permitted to reply. On October 23, 2008, we issued an order to show cause.[6]

## DISCUSSION

In this court, the County renews the arguments made below that section 1299 et seq. impermissibly infringe upon the County's constitutional authority under section 1, subdivision (b) and section 11, subdivision (a) of article XI. After discussing our standard of review, we will first analyze the merits of the parties' contentions regarding section 1, subdivision (b) before considering their arguments under section 11, subdivision (a).[7]

### I. *Standard of Review*

■ We accord a presumption of constitutionality to acts of the Legislature, particularly when that body has enacted a statute with the relevant constitutional prescriptions clearly in mind. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].) But "we also must enforce the provisions of our Constitution and 'may not lightly

---

[6] By issuing our order to show cause, we necessarily determined the propriety of writ review. (See *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 161–162 & fn. 5 [53 Cal.Rptr.3d 69] (*Zembsch*).) We observe that this case involves a novel and significant constitutional question which has generated conflicting trial court decisions and, under the circumstances of this case, petitioner lacks an adequate remedy at law and would suffer irreparable harm absent writ review. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Zembsch, supra*, 146 Cal.App.4th at pp. 160–161 & fn. 4; *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273–1274 [258 Cal.Rptr. 66].)

[7] In addition to the parties' briefs on these issues, we have received a brief of amicus curiae in support of petitioner filed by the California State Association of Counties and the League of California Cities. An amicus curiae brief in support of real party in interest has been filed by the Peace Officers Research Association of California Legal Defense Fund and the California Professional Firefighters (PORAC).

On January 28, 2009, we requested that the parties submit supplemental briefs on certain additional issues. Chief among these was whether a local governing body retained the ultimate authority to implement unilaterally terms and conditions of employment under Government Code section 3505.4 if the governing body rejected the decision of an arbitration panel pursuant to section 1299.7, subdivision (c). (See Gov. Code, § 3505.4 ["a public agency *that is not required to proceed to interest arbitration* may implement its last, best, and final offer . . ." (italics added)].) Both the parties and PORAC submitted supplemental briefs in response to our request. These issues were not briefed in the trial court, however, and we have determined that we need not reach them.

disregard or blink at . . . a clear constitutional mandate.' [Citation.]" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252 [48 Cal.Rptr.2d 12, 906 P.2d 1112].)

The County's challenge to the constitutionality of section 1299 et seq. is subject to de novo review. (*California Family Bioethics Council, LLC v. California Institute for Regenerative Medicine* (2007) 147 Cal.App.4th 1319, 1338 [55 Cal.Rptr.3d 272].) The County raises a facial challenge, so we consider "only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Thus, to succeed on its challenge, the County cannot prevail merely "by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioner[] must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation v. Brown, supra*, 29 Cal.3d at pp. 180–181.)

SCLEA insists that we must deny the County's petition unless no set of circumstances exists under which the law will be valid. We think this is a more stringent test than that applied by the California Supreme Court. (See, e.g., *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 673 [117 Cal.Rptr.2d 269, 41 P.3d 87] ["minimum showing" required for facial challenge is that statute is unconstitutional "in the *generality* or *great majority* of cases"].) We may not "uphold the law simply because in some hypothetical situation it might lead to a permissible result." (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 [84 Cal.Rptr.2d 425, 975 P.2d 622].)

II. *Section 1299 et seq. Violate Section 1, Subdivision (b) Because the Statute Divests the County's Governing Body of the Ultimate Authority to "Provide for" Employee Compensation.*

A. *History and Purpose of Section 1, Subdivision (b)*

In analyzing the parties' arguments concerning section 1, subdivision (b) of article XI, we are guided by that section's history and purpose. (See *Riverside, supra*, 30 Cal.4th at pp. 285–286.) The California Supreme Court reviewed the history of current section 1, subdivision (b) in *Voters for Responsible Retirement, supra*, 8 Cal.4th 765. There, the court explained: "Article XI, section 1(b) was originally enacted in June of 1970, as part of a comprehensive revision of article XI, governing the constitutional prerogatives of and limitations on California cities and counties." (*Voters for Responsible Retirement*, at p. 772.) Its predecessor was former article XI,

section 5, a provision that had been amended in 1933 to "transfer[] control over the compensation of most county employees and officers from the Legislature to the boards of supervisors." (*Voters for Responsible Retirement*, at p. 774.) According to the Supreme Court, the purpose of the 1933 amendment was "to give greater local autonomy to the setting of salaries for county officers and employees, removing that function from the centralized control of the Legislature." (*Id.* at p. 772.) Thus, under section 1, subdivision (b) "the *county*, not the state, not someone else, shall provide for the compensation of its employees." (*Riverside, supra*, 30 Cal.4th at p. 285, original italics.)

*Riverside* drew additional support for this view from the ballot argument in favor of the 1933 amendment to former section 5. (*Riverside, supra*, 30 Cal.4th at p. 286.) The argument to the voters stated that the measure "gives the board *complete authority* over the number, method of appointment, terms of office and employment, and *compensation* of all deputies, assistants, and employees." (Ballot Pamp., Special Elec. (June 27, 1933) argument in favor of Prop. 8, p. 10, italics added.) Later, in what our Supreme Court has termed an "authoritative review of the predecessors to present article XI, sections 3, 4 and 5" (*Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1207 [36 Cal.Rptr.2d 55, 884 P.2d 1003]), Professor Arvo Van Alstyne observed, "The purpose of this [provision], it seems clear, was to <u>limit</u> the power of the Legislature; for without it, the authority to enact legislation with respect to . . . compensation of county . . . employees would reside, as before, in the Legislature. The vesting of this power . . . in [the] boards of supervisors was thus apparently intended to be an exclusive vesting." (Background Study Relating to Article XI: Local Government (1966) Cal. Const. Revision Com., pp. 103–104.) Section 1, subdivision (b) of article XI is therefore a "home rule" measure, one specifically intended to deprive the Legislature of the power to set compensation for county employees and to entrust that authority to county governing bodies. (See *Riverside, supra*, 30 Cal.4th at pp. 285, 288.)

B. *The Compensation of County Employees Is a Local, Not Statewide, Concern.*

SCLEA first argues that the statute is valid because it addresses a matter of statewide concern. Citing the legislative findings in support of the bill, it contends that section 1299 et seq. were enacted to avoid "public safety labor strife" that might otherwise lead to strikes by firefighters and law enforcement officers. (See § 1299 [legislative findings and declarations].) We disagree.

■ The Supreme Court rejected a virtually identical argument in *Riverside*. (*Riverside, supra,* 30 Cal.4th at pp. 286–289.) While conceding that the Legislature's findings are entitled to great weight, it explained: " '[T]he Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.' [Citation.]" (*Id.* at p. 287.) ■ The court then held that compensating county employees is a municipal function. (*Id.* at p. 292.) Subsequent cases have followed *Riverside* and held that a number of other policies affecting county employee compensation are matters of local, not statewide, concern. (See *Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1279, 1283 [83 Cal.Rptr.3d 576] [meal periods and pay for missed meal periods]; *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 643, 645 [79 Cal.Rptr.3d 383] [claims for overtime pay and meal and rest breaks]; *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 338–340 [34 Cal.Rptr.3d 635] [payment for work uniforms of county employees].) It necessarily follows that the compensation of the County's employees is not a matter of statewide concern.[8]

### C. *The Distinction Between Substantive and Procedural Regulation of Labor Relations*

■ Although it held the compensation of county employees to be a local or municipal affair, *Riverside* recognized that " 'the maintenance of stable employment relations between police officers and their employers is a matter of statewide concern.' " (*Riverside, supra,* 30 Cal.4th at p. 287, quoting *Baggett v. Gates, supra,* 32 Cal.3d at pp. 139–140.) The court therefore agreed that the Constitution does not prohibit the Legislature from regulating such matters even if the regulation impinges to a limited extent on powers the California Constitution reserves specifically to counties and cities. (*Riverside, supra,* at p. 287.) *Riverside* " 'emphasize[d] that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. . . . [Citation.]' " (*Riverside, supra,* 30 Cal.4th at p. 289.) It drew a sharp contrast between cases involving the Legislature's attempts to regulate actual wage and salary levels and those in which the Legislature had established only procedures governing labor relations. (*Id.* at pp. 288–289.) In the former category of cases, the court found that the Legislature had

---

[8] SCLEA's argument that the statute addresses the statewide concern of strikes by police and firefighters also ignores the fact that those employees lack the right to strike. (See Lab. Code, § 1962; *County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564, 586 [214 Cal.Rptr. 424, 699 P.2d 835].) Indeed, section 1299.4, subdivision (d) itself prohibits employees from engaging in strikes that endanger public safety. We are unwilling to base a finding of statewide concern on the assumption that police officers and firefighters will disobey the law.

infringed upon the constitutional rights of other governmental entities. (See *San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 789–791 [163 Cal.Rptr. 460, 608 P.2d 277] [statute requiring University of California to pay employees at least prevailing wages violated powers reserved to regents under art. IX, § 9]; *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 302, 314–317 [152 Cal.Rptr. 903, 591 P.2d 1] [statute prohibiting distribution of state funds to local public agencies that granted their employees cost-of-living allowances greater than those provided to state employees violated art. XI, § 4, subds. (c) & (f) and art. XI, § 5, subd. (b)].) In the latter category of cases, the court had upheld the challenged statutes because they imposed only procedural safeguards and requirements, and had impinged only minimally on home rule powers protected by article XI. (*Seal Beach, supra*, 36 Cal.3d at pp. 597, 598–601; *Baggett v. Gates, supra*, 32 Cal.3d at pp. 137–140.)

■ In summary, procedural statutes do not conflict with the constitutional powers of local governments because "the governing body of the agency . . . retains the ultimate power to refuse an agreement and to make its own decision." (*Seal Beach, supra*, 36 Cal.3d at p. 601.) A statute is substantive, however, if under its provisions "the county's governing body does not retain the ultimate power" to set employee compensation. (*Riverside, supra*, 30 Cal.4th at p. 289.) The constitutionality of section 1299 et seq. thus turns on whether the statute permits the County's governing body to make the final decision on the compensation of county employees. The answer to this question requires us to examine section 1299 et seq. in the context of the public employee labor relations scheme established by the MMBA. (See *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 665 [224 Cal.Rptr. 688, 715 P.2d 648] [court must interpret provision of statute in context of entire statutory scheme, including statutory provisions in separate codes]; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 591 [48 Cal.Rptr.3d 340] [same].)

D. *Section 1299.7 Impermissibly Interferes with the Governing Body's Constitutional Authority Under Section 1, Subdivision (b) to Establish Employee Compensation.*

The County argues that the requirements of subdivisions (b) and (c) of section 1299.7 conflict with the County's plenary legislative authority under article XI, section 1, subdivision (b) to "provide for the . . . compensation . . . of employees." The County's argument is twofold. First, it contends that under the procedures established by Senate Bill 440, it is the arbitration panel that establishes employee compensation, and the authority of the County's

governing body—the board of supervisors—is reduced to a mere veto power. It asserts that this deprives the board of its constitutional right to set the compensation of county employees and leaves it with nothing more than the power to reject the arbitration panel's decision, and then only by a unanimous vote. Second, the County maintains that the unanimous vote requirement of section 1299.7, subdivision (c) is inconsistent with section 1, subdivision (b) of article XI because the Constitution grants the power to set employee compensation to the "governing body," and, in the County's view, this can only mean a *majority* of the governing body. Because section 1299.7, subdivisions (b) and (c) make the arbitration panel's decision binding on the County even if a majority of the board votes to reject the decision, the County argues that the statute has deprived the "governing body" of its authority to provide for the compensation of county employees. The County's argument therefore turns on the proper interpretation of the term "governing body" in section 1, subdivision (b).

SCLEA responds that section 1, subdivision (b) of article XI grants the Legislature the power to "provide for . . . an elected governing body in each county." (Cal. Const., art. XI, § 1, subd. (b).) According to SCLEA, this power necessarily includes the power "to determine the number of board members and quorum and voting procedures." It contends that the unanimous vote requirement of section 1299.7, subdivision (c) is merely procedural. SCLEA also asserts that the unanimous vote requirement does not, as the County contends, prescribe rule by the minority because a single vote could decide the fate of any proposed piece of legislation. It cites a number of constitutional and statutory provisions imposing supermajority requirements on the Legislature and local governments and argues that despite such supermajority requirements, the resulting decisions are still considered actions of the legislative body to which the requirement applies. Finally, in its supplemental brief, SCLEA argues that the unanimous vote requirement of section 1299.7, subdivision (c) represents the Legislature's attempt to create a "balance" on the governing body's power to implement its last, best, and final offer unilaterally.

### 1. *The Nature of Interest Arbitration*

Before addressing the parties' arguments, we pause briefly to explain the nature of interest arbitration, since the legal effect of this type of arbitration is relevant to our analysis. "Interest arbitration concerns the resolution of labor disputes over the formation of a collective bargaining agreement." (1 Grenig, Alternative Dispute Resolution (3d ed. 2005) Dispute Resolution Methods, § 2:40, p. 34.) It differs from the more commonly understood practice of

grievance arbitration because, " 'unlike grievance arbitration, [it] focuses on what the terms of a new agreement should be, rather than the meaning of the terms of the old agreement. . . .' [Citation.]" (*Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1596–1597 [45 Cal.Rptr.3d 609] (*Hess*).) Put another way, interest arbitration is concerned with the acquisition of future rights, while grievance arbitration involves rights already accrued, usually under an existing collective bargaining agreement. (*School Committee of Hanover v. Hanover Teachers Association* (2002) 435 Mass. 736, 738, fn. 2 [761 N.E.2d 918, 920, fn. 2].) An interest arbitrator thus does not function as a judicial officer, construing the terms of an existing contract and applying them to a particular set of facts. (*Hess, supra*, 140 Cal.App.4th at p. 1597.) Instead, the interest arbitrator's function is effectively legislative, because the arbitrator is fashioning new contractual obligations. (*Ibid.*)

For these reasons, interest arbitration is sometimes referred to as "contract arbitration or quasi-legislative arbitration." (*Stockton Metropolitan Transit Dist. v. Amalgamated Transit Union* (1982) 132 Cal.App.3d 203, 210 [183 Cal.Rptr. 24].) Consequently, as Professor (later Justice) Joseph Grodin recognized, when binding interest arbitration is applied in the public sector, it may result in the arbitrator's involvement in matters that extend beyond those over which labor and management customarily bargain in private sector disputes; binding interest arbitration may push the arbitrator into the realm of social planning and fiscal policy. (Grodin, *Political Aspects of Public Sector Interest Arbitration* (1976) 64 Cal. L.Rev. 678, 682, 687–688.) The obvious reason for this is that costs arising from the terms of a binding interest arbitration award must be paid out of governmental funds. For example, if an interest arbitrator were to accept the demand by a firefighters' union that a local government add an engine company, this might require "the building of a new fire house or the purchase of new equipment, . . . [and] could very well intrude upon management's role of formulating policy." (See *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 619 [116 Cal.Rptr. 507, 526 P.2d 971].) A decision in a binding public sector interest arbitration proceeding might therefore require the governmental employer either to cut other items from its budget or to increase taxes. (Grodin, *supra*, 64 Cal. L.Rev. at p. 687.)

2. *Section 1299.7 Affects a Governing Body's Legislative Powers.*

■ The foregoing discussion supports the County's contention that section 1299.7 affects matters ordinarily falling within the legislative powers of a county board of supervisors. The fixing of the salaries of county employees is unquestionably a legislative function. (*Carrier v. Robbins* (1952) 112

Cal.App.2d 32, 35 [245 P.2d 676]; see *Alameda County Employees' Assn. v. County of Alameda* (1973) 30 Cal.App.3d 518, 531 [106 Cal.Rptr. 441].) It is equally clear that "[t]he fixing of the number of employees, the salaries and employee benefits is an integral part of the statutory procedure for the adoption of the county budget . . . ." (*Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228, 235 [138 Cal.Rptr. 101].) The exercise of the board's legislative power in budgetary matters "entails a complex balancing of public needs in many and varied areas with the finite financial resources available for distribution among those demands. . . . [I]t is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available." (*County of Butte v. Superior Court* (1985) 176 Cal.App.3d 693, 699 [222 Cal.Rptr. 429].) In so doing, the board must weigh "a number of other factors besides the level of the union members' salaries." (*California Teachers Assn. v. Ingwerson* (1996) 46 Cal.App.4th 860, 876 [53 Cal.Rptr.2d 917].) The County is therefore correct in contending that section 1299.7 affects "the board's creative legislative function to set employee wages."

### 3. *Section 1299.7, Subdivision (c) Grants a Local Governing Body Only a Veto over the Arbitration Panel's Decision.*

██ We also agree with the County's characterization of the governing body's authority under section 1299.7, subdivision (c). Under that section, a governing body's sole power is to reject the decision of the arbitration panel. This limited power of rejection is more akin to the veto power traditionally associated with the executive than it is to the legislative power to make laws. (Compare *People v. Bunn* (2002) 27 Cal.4th 1, 15 [115 Cal.Rptr.2d 192, 37 P.3d 380] [legislative function "embraces the far-reaching power to weigh competing interests and determine social policy"] with *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1086 [240 Cal.Rptr. 569, 742 P.2d 1290] [noting " 'qualified and destructive legislative function' " of gubernatorial veto].) The parties have referred us to no case involving a statute with an analogous voting requirement, and our own research discloses none. Nevertheless, the few available authorities support the County's view that the statute allows the governing body no more than a veto over the arbitration panel's decision. (Cf. *Consumer Energy, etc. v. F. E. R. C.* (D.C. Cir. 1982) 218 U.S. App.D.C. 34 [673 F.2d 425, 435] [power of one house of Congress to block implementation of agency rule described as "veto"]; *State ex rel. Barker v. Manchin* (1981) 167 W.Va. 155 [279 S.E.2d 622, 632] [power of legislative committee or full legislature to sustain or reverse agency regulation "constitutes a legislative veto power comparable to the authority vested in the Governor"].) That is, the effect of the governing body's rejection is exclusively "negative, frustrating an act without substituting anything in its place." (*Harbor v.*

*Deukmejian, supra,* 43 Cal.3d at p. 1085.) Thus, where the county's governing body "acts in accordance with [section 1299.7,] subdivision (c)," (§ 1299.7, subd. (b)), it does not thereby "provide for" the compensation of county employees. The result of such a vote is only to prevent *another body* from establishing binding terms for the compensation of county employees.

### 4. The Term "Governing Body" in Section 1, Subdivision (b) Necessarily Means a Majority of the Governing Body.

We turn now to the crux of the County's argument. Section 1, subdivision (b) of article XI grants the county's "governing body" the power to establish the compensation of county employees.[9] Although the constitutional provision does not specifically say that only a majority of the governing body, as opposed to a minority thereof, may set compensation, for the reasons we discuss below, no other construction of section 1, subdivision (b) is reasonable, or indeed even permissible. Permitting a minority of a governing body to set the compensation of county employees by making the arbitration panel's decision binding on the county would be inconsistent with both long-standing statutory rules of interpretation and established California case law, as well as deeply offensive to basic principles of representative democracy.

█ In determining how the term "governing body" in section 1, subdivision (b) of article XI is to be interpreted, we are guided first by rules of construction established by the Legislature itself. Both Code of Civil Procedure section 15 and Civil Code section 12 provide: "Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the Act giving the authority." (See also Pen. Code, § 7, subd. 17 [same].) The California Supreme Court long ago described this as "a necessary rule, and established by the general authorities . . . ." (*Jacobs v. Board of Supervisors* (1893) 100 Cal. 121, 132 [34 P. 630].) The board of supervisors of a general law county is composed of five members. (Gov. Code, § 25000, subd. (a).) Thus, section 1, subdivision (b) of article XI grants the authority

---

[9] In *Riverside,* the Supreme Court discussed the power to set employee compensation in section 1, subdivision (b) of article XI either as a power of counties or as a power of county governing bodies. (*Riverside, supra,* 30 Cal.4th at pp. 285, 288–289.) A county acts only through its governing body, the board of supervisors, which exercises the powers of the county. (*Steiner v. Darby* (1948) 88 Cal.App.2d 481, 493 [199 P.2d 429]; see David, The Law of Local Government (1965) § 57, p. 53 [where "powers are conferred upon the governing body, [it] exercises them as trustees in behalf of the persons dwelling within the geographical county"].) Thus, for purposes of our discussion, there is no practical distinction between the county and its governing body, and therefore the terms may be used interchangeably.

to establish employee compensation to a collective body of more than three members—the five-member board of supervisors—and section 1, subdivision (b) does not "otherwise express[]" that the power granted shall be exercised by other than a majority. ▌ The cited statutes would thus seem to compel the conclusion that the term "governing body" in section 1, subdivision (b) means a "majority of the governing body."

This conclusion is bolstered by California case law. More than 100 years ago, in *People v. Hecht* (1895) 105 Cal. 621 [38 P. 941], our Supreme Court elaborated on the power enjoyed by a majority of a collective legislative body: "If a majority possesses all the authority of the whole, then such majority must be competent to its exercise. [¶] For all practical purposes *the majority becomes the full board. It is the receptacle—the reservoir—of all the authority conferred upon the whole* . . . ."[10] (*People v. Hecht*, at p. 627, italics added; accord, 4 McQuillin, The Law of Municipal Corporations (3d ed. 2002) Council Meetings, § 13.07, p. 820 ["The act of a majority of a board . . . at a meeting duly held is the act of the body." (Fn. omitted.)].) More recently, Division One of this district explained that "if a board is composed of five members three of such members constitute a majority capable and competent to exercise the authority of the whole board." (*Ursino v. Superior Court* (1974) 39 Cal.App.3d 611, 620 [114 Cal.Rptr. 404]; accord, *Delegation of Authority*, 63 Ops.Cal.Atty.Gen. 240, 245 (1980).) Since a majority of the governing body possesses all of the authority of the whole and effectively "becomes the full board" (*People v. Hecht, supra*, 105 Cal. at p. 627), section 1, subdivision (b)'s allocation to the "governing body" of the power to establish employee compensation must be read as allocating that power to a majority of the governing body.

▌ California's statutory law provides additional support for this reading. The firmly established common law rule is "that legislative action is only valid if it has been approved by a majority of the members elected." (2 Martinez, Local Government Law (2008) Processes of Governance, § 11:9, p. 11-55.) This rule finds specific expression in the Government Code provisions relating to the boards of supervisors of general law counties. Under Government Code section 25005, "[n]o act of the board shall be valid

---

[10] A roughly contemporaneous opinion of the United States Supreme Court is to the same effect. Speaking of legislative bodies, the court observed that "[p]ower is not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole . . . ." (*United States v. Ballin* (1892) 144 U.S. 1, 7 [36 L.Ed. 321, 12 S.Ct. 507].) The court went on to quote Lord Mansfield, who took " 'for granted that a *majority* of the mayor and aldermen for the time being are sufficient to constitute the assembly.' " (*Ibid.*, quoting *Rex v. Monday* (1777) 98 Eng. Rep. 1224, 1229.)

or binding *unless a majority of all the members concur therein.*"[11] (Italics added.) In addition, under the Ralph M. Brown Act, Government Code section 54950 et seq., " 'action taken' means a collective decision made by a *majority* of the members of a legislative body . . . ." (Gov. Code, § 54952.6, italics added.) The Legislature has therefore determined that only a majority of a county board of supervisors has the power to pass valid or binding legislation.

The common law and statutory rules requiring that legislative bodies act only by majority vote reflect "the deeply embedded principle of majority rule in a democratic society . . . ."[12] (2 Martinez, Local Government Law, *supra*, § 11:9, pp. 11-55 to 11-56.) In legislative bodies, "the principle of majority rule is of the very essence. . . . It is in fact the basis upon which popular self-government largely rests." (Mason, Manual of Legislative Procedure (1979) Vote Required, ch. 46, § 510, ¶ 6, p. 357; see also Madison, The Federalist No. 10 (Cooke ed. 1961) p. 60 [describing majority rule as "the republican principle, which enables the majority to defeat [a minority's] views by regular vote"].) Simply put, in a representative democracy such as ours, a "simple majority vote is a formal requirement in our system for giving policies legal effect and legitimacy." (Roberts & Chemerinsky, *Entrenchment of Ordinary Legislation: A Reply to Professors Posner and Vermeule* (2003) 91 Cal. L.Rev. 1773, 1797.)

The foregoing discussion makes clear that section 1299.7 interferes with the constitutional authority of governing bodies to set county employee compensation under section 1, subdivision (b) of article XI, because the statute permits less than a majority of the governing body to set employee compensation by making the arbitrators' decision final and binding upon the county. Section 1299.7, subdivision (b) provides that the arbitration panel's

---

[11] We note that this language alters the ordinary common law rule, which is "that . . . in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." (*FTC v. Flotill Products* (1967) 389 U.S. 179, 183 [19 L.Ed.2d 398, 88 S.Ct. 401], fn. omitted.) Because Government Code section 25005 requires the concurrence of "a majority of all the members" of the board of supervisors before the body's actions may be valid or binding, valid acts require the affirmative vote of a majority of the board's entire membership, and not merely that of a majority of a quorum. (See *Dry Creek Valley Assn., Inc. v. Board of Supervisors* (1977) 67 Cal.App.3d 839, 845 [135 Cal.Rptr. 726]; see also *Pimental v. City of San Francisco* (1863) 21 Cal. 351, 360 [city charter requiring that no ordinance could be passed " 'unless by a majority of all the members elected to each Board' " meant that four-to-three vote of eight-member board was insufficient to pass measure]; *Ordinance Mandating Four-Fifths Vote on Specified Matters Before County Board of Supervisors*, 66 Ops.Cal.Atty.Gen. 336, 337 (1983) (*Four-Fifths Vote*).)

[12] An obvious corollary of this rule is that the minority of a legislative body cannot bind the majority or enact legislation. " '[W]here the corporate power resides in a select body, as a city council . . . , a *minority* of the select body, . . . are powerless to bind the majority or do any valid act.' " (*United States v. Ballin, supra*, 144 U.S. at p. 7, quoting 1 Dillon, Commentaries on the Law of Municipal Corporations (4th ed. 1890) § 283, p. 359.)

decision will become final and binding unless the governing body acts in accordance with subdivision (c). (§ 1299.7, subd. (b).) Subdivision (c) of that section permits the governing body to veto the arbitration panel's decision only by a unanimous vote of all of the body's members. (§ 1299.7, subd. (c).) Therefore, the terms of the statute empower a minority of a board of supervisors to make the arbitrators' decision binding on the county, even if the majority of that body disagrees.

As we explained above (see part II.D.2., *ante*), the setting of employee compensation is a legislative act that is part of the governing body's budgetary process. Thus, the statute purports to authorize the adoption of a legislative act—and the imposition of binding contractual obligations upon a county and its taxpayers—even if a majority or supermajority of the democratically elected representatives of the people *rejects* the arbitration panel's decision.[13] Because "three members must 'concur' in order to act" (*Four-Fifths Vote, supra*, 66 Ops.Cal.Atty.Gen. at p. 337), the votes of one or two members of a governing body simply cannot be construed as an act of the governing body itself. (See Gov. Code, § 25005; cf. *Price v. Tennant Community Services Dist.* (1987) 194 Cal.App.3d 491, 497 [239 Cal.Rptr. 572] ["it is nonsensical to talk about a quorum or majority of one"].)

The anomalous nature of section 1299.7's procedure becomes even more apparent when we compare it to the usual manner in which the compensation of county employees is established. Ordinarily under the MMBA, an MOU between a public agency and a public employee organization becomes binding only if it is *affirmatively approved* by the governing body of the local agency. (See *Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22, 25 [132 Cal.Rptr. 668, 553 P.2d 1140] [Gov. Code, § 3505.1 "reflect[s] the legislative decision that the ultimate determinations are to be made by the governing body itself . . . ."]; *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 336 [124 Cal.Rptr. 513, 540 P.2d 609] [only the governing body's "*favorable* 'determination' engenders a binding agreement"].) In contrast, the statute before us does not require a favorable determination by the county's governing body. Instead, it provides that at the

---

[13] Indeed, since the statute provides that the arbitration panel's decision may be rejected only "by unanimous vote of all the members of the governing body" (§ 1299.7, subd. (c)), the county would be bound by the arbitrators' decision if any member of the board of supervisors did not vote because of absence, incapacity, or recusal. (See *Hopkins v. MacCulloch* (1939) 35 Cal.App.2d 442, 452–453 [95 P.2d 950] [where one member of five-member city council was absent and did not vote, four affirmative votes were insufficient to grant application under ordinance permitting grant only by a " 'full, affirmative vote of all members' " of the city council].) In fact, if a member of the board were incapacitated or precluded from voting because of a conflict of interest, a vote of the board would be essentially futile, because, in such circumstances, the board could act in only one manner—it could only "accept" the decision of the arbitration panel. (Cf. *Ursino v. Superior Court, supra*, 39 Cal.App.3d at p. 620.)

conclusion of the five-day period, the arbitration panel's decision shall be binding on the parties unless rejected by a unanimous vote of all members of the governing body. (§ 1299.7, subds. (b), (c).) This means that the arbitrators' decision will become binding where there is no legislative action at all. The decision also becomes binding if it receives an *unfavorable* determination from the majority of the governing body, so long as at least one member of the body either votes to accept the decision or does not vote.

As our Supreme Court has observed, local governments "function both as employers and as democratic organs of government." (*Seal Beach, supra,* 36 Cal.3d at p. 599.) The court has upheld the Legislature's regulation of public employee labor relations where "the burden on the [local government's] democratic functions is minimal." (*Ibid.*) By permitting a minority of a county's governing body to impose binding obligations on a county, it is plain that section 1299.7 imposes far more than a minimal burden on the democratic functions of local government. It therefore cannot be viewed as a mere procedural regulation of county labor relations. (See *Riverside, supra,* 30 Cal.4th at pp. 288–289.) It is instead substantive, in that it impinges substantially on the authority of local governing bodies to provide for the compensation of their employees, and it therefore conflicts with the Constitution's reservation of this power to local governments. (30 Cal.4th at p. 288.)

In sum, as we have explained above, the term "governing body" in section 1, subdivision (b) of article XI can only refer to a majority of the governing body. Thus, a statute that permits less than a majority of the governing body to establish the compensation of county employees cannot be squared with the governing body's constitutional authority to "provide for" county employee compensation. We therefore agree with the County that section 1299.7 violates article XI, section 1, subdivision (b) of the California Constitution.

E. *Section 1299.7, Subdivision (c) Is Not Analogous to a Supermajority Requirement.*

SCLEA seeks support from constitutional and statutory provisions requiring a supermajority for the passage of legislation, but these do not assist its argument. (See, e.g., Cal. Const., art. IV, § 8, subd. (d) [requiring two-thirds vote of Legislature for passage of urgency statutes]; *id.,* art. IV, § 10, subd. (a) [requiring two-thirds vote of Legislature to override Governor's veto]; *id.,* art. XIII, § 7 [requiring two-thirds vote of Legislature to authorize county boards of supervisors to exempt certain real property from taxation]; *id.,* art. XIII A, § 3 [requiring two-thirds vote of Legislature to increase state taxes]; *id.,* art. XVIII, § 1 [requiring two-thirds vote of Legislature to propose

amendments or revisions to Constitution]; Code Civ. Proc., § 1245.245 [requiring two-thirds vote of board of supervisors for certain uses of county property acquired by eminent domain]; Gov. Code, § 25550 [requiring unanimous vote of board of supervisors to convey property to city]; Gov. Code, § 29088 [requiring four-fifths vote of board of supervisors to change budget after public hearing]; Pub. Contract Code, § 20128 [requiring four-fifths vote for postaward alteration of public works contract].) All of the provisions cited demand a heightened majority for passage of certain acts of a legislative body. When such supermajority requirements are imposed, "governmental action is conditioned upon the ability *of its proponents* to secure the support of more than a bare majority."[14] (*Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 797 [87 Cal.Rptr. 839, 471 P.2d 487], italics added, overruled on another ground as stated in *Los Angeles County Transportation Com. v. Richmond* (1982) 31 Cal.3d 197, 203 [182 Cal.Rptr. 324, 643 P.2d 941].) By limiting the power of a simple majority of the body to change the status quo through the passage of legislation, supermajority requirements "afford[] minorities power *to preserve the status quo*." (*Westbrook v. Mihaly, supra,* 2 Cal.3d at p. 797, italics added.) The intent of such a requirement is " '*to deter* the . . . action to which it applies, since it conditions such action on a degree of consensus unusual in our pluralistic society.' [Citation.]" (*Los Angeles County Transportation Com. v. Richmond, supra,* 31 Cal.3d at p. 204, italics added; see *Gordon v. Lance* (1971) 403 U.S. 1, 5–6 [29 L.Ed.2d 273, 91 S.Ct. 1889] [supermajority rules make it "more difficult for some kinds of governmental actions to be taken"].)

---

[14] The case of *In re Application for Incorporation as City* (1987) 241 Kan. 396 [736 P.2d 875] (*City of Sherwood*), upon which SCLEA relies, illustrates this principle. In that case, a Kansas statute required a unanimous vote of the board of county commissioners before territory within the county could be incorporated as a city. (*Id.,* 736 P.2d at p. 877.) Residents of the county filed an application for incorporation of their area as a city, but the application garnered only two favorable votes on the three-member commission. (*Id.* at p. 876.) The appellant contended the statute's unanimous vote requirement constituted a delegation of legislative power to a single individual rather than to the board of commissioners because a single commissioner could prevent a unanimous vote and thus override *the decision of the majority.* (*Id.* at p. 877.) The Kansas Supreme Court disagreed, stating: "Although incorporation was denied as a result of the vote of only one commissioner, the action taken was that of the Board and not that of the one dissenting commissioner." (*Id.* at p. 878.) Thus, the failure to achieve the necessary unanimity prevented the county commissioners from enacting legislation changing the status quo and approving incorporation of the city.

The procedure described in *City of Sherwood* is not analogous to the one before us. To be truly analogous to our case, the statutory scheme in *City of Sherwood* would have to have provided that the application for incorporation would be deemed *approved* by the board of commissioners unless rejected by a unanimous vote. In that case, a single commissioner would have the power to change the status quo by approving the application for incorporation, such that the vote of a single member could properly be seen as "overriding the decision of the majority of the board." (*City of Sherwood, supra,* 736 P.2d at p. 877.)

█ Section 1299.7, in contrast, does *not* require a supermajority of the governing body to change the status quo through the adoption of legislation; it permits a minority of the governing body to perform a legislative act. Section 1299.7 imposes a unanimous vote requirement on local governing bodies not to approve their *own* measures, but to block the action of a wholly separate body.[15] In other words, under section 1299.7, a minority of the governing body can force a change in the status quo by making the arbitration panel's decision binding. Thus, as we have seen, a legislative measure will be adopted, and the county's taxpayers will be bound by the decision of an unelected arbitration panel, if a single member of the local governing body either votes to accept the arbitrators' decision or simply does not vote. (§ 1299.7, subds. (b), (c).) Thus, section 1299.7 purports to permit the performance of a legislative act—the setting of county employee compensation—by a *minority* of the governing body. Properly viewed, section 1299.7, subdivision (c) is thus not a supermajority requirement at all. It is a provision for minority rule.

### F. *SCLEA's Policy Arguments Are Unpersuasive.*

In its supplemental brief, SCLEA contends that the inclusion of the unanimous vote requirement in section 1299.7, subdivision (c) was intended as a "balance" on the local governing body's power of unilateral implementation under Government Code section 3505.4. SCLEA contends that the arbitration process would be meaningless if governing bodies could reject the arbitrators' decision by a simple majority vote, and the union advances a number of policy arguments in support of the unanimity requirement. SCLEA's arguments are unpersuasive.

█ First, whether the Legislature intended the unanimous vote requirement as a "balance" or check upon a local governing body's power of unilateral implementation is not directly relevant to the question before us. We are here asked to decide whether section 1299.7 comports with the powers reserved to county governments under article XI of the California Constitution. The County's constitutional argument "does not challenge the motives and goals of the Legislature as good or bad. It simply challenges whether the power exists under the Constitution to do that which was done or

---

[15] SCLEA appears to argue that the arbitration panel's decision is somehow an act of the local governing body if even a single member votes against rejection of the decision. This turns ordinary principles of representative democracy on their head. To be valid, the action of the board of supervisors of a general law county requires, at the barest minimum, the votes of three of the five board members. (Gov. Code, § 25005 ["No *act of the board* shall be valid or binding *unless a majority of all the members concur therein*" (italics added)].) As we have explained above, the vote of a single member is not an "act of the board."

is proposed to be done." (*Howard Jarvis Taxpayers' Assn. v. Fresno Metropolitan Projects Authority* (1995) 40 Cal.App.4th 1359, 1362 [48 Cal.Rptr.2d 269] (*Howard Jarvis*).) Whatever the Legislature's goals may have been, we are called upon to address only the much narrower question of the statute's constitutionality. (*Id.* at p. 1363.)

Second, we cannot agree with SCLEA's argument that allowing a simple majority of a governing body to reject an arbitration panel's decision makes the arbitration process meaningless. Such an argument proves too much. One might just as well argue that the meet-and-confer requirement of the MMBA is "meaningless" because the governing body retains the ultimate authority to refuse to agree on any particular issue in the negotiations. (E.g., *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630 [47 Cal.Rptr.3d 69, 139 P.3d 532].)

Finally, we reject SCLEA's policy-based arguments in support of the unanimous vote requirement. SCLEA contends that the unanimity requirement ensures that section 1299 et seq. are not used offensively against employee organizations. We are frankly puzzled by this argument, because the decision to invoke the procedures of section 1299 et seq. rests entirely in the hands of the employee organization. Section 1299.4, subdivision (a) allows only the employee organization, not the public agency, to request interest arbitration. (§ 1299.4, subd. (a) ["the *employee organization* may, by written notification to the employer, request that their differences be submitted to an arbitration panel" (italics added)]; 1 Zerger et al., California Public Sector Labor Relations (2008) Impasse Resolution, § 12:40, p. 12-18 ["only an employee organization may request interest arbitration"].) We therefore fail to see how a local government could ever use the procedure offensively against an employee organization.

SCLEA also expresses the view that "without a unanimity requirement, the cost and effort required for an employee organization to challenge a governing body's conduct during negotiations would substantially increase." SCLEA cites no authority for this argument, but it appears to be premised on the assumption that an employee organization will be "forced" to submit to arbitration to exhaust its administrative remedies before bringing an unfair labor practice charge. We are unable to evaluate this argument, because SCLEA has failed to support it with proper authority. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) In any event, as stated previously, our only task is to determine whether section 1299 et seq. pass constitutional muster. Concerns regarding the possible financial consequences of the statutory procedure are more properly addressed to the Legislature.

### G. *Severability*

Raising an argument it did not make below, SCLEA contends that if we determine the unanimous vote requirement renders section 1299 et seq. unconstitutional, we may avoid invalidating the statute by severing the word "unanimous" from section 1299.7, subdivision (c). Assuming that this argument is properly before us, we disagree.

Initially we observe that section 1299 et seq. contain no severability clause, although the absence of such a clause is not conclusive. (*Legislature v. Eu* (1991) 54 Cal.3d 492, 535 [286 Cal.Rptr. 283, 816 P.2d 1309].) To be severable, the invalid provision must be grammatically, functionally, and volitionally separable. (*McMahan v. City and County of San Francisco* (2005) 127 Cal.App.4th 1368, 1374 [26 Cal.Rptr.3d 509].) Assuming the word "unanimous" is grammatically and functionally separable from the remainder of the statute, it is far from clear that it is volitionally separable, because we cannot be certain that the Legislature would have enacted the measure without the unanimous vote requirement. (See *Barlow v. Davis* (1999) 72 Cal.App.4th 1258, 1267 [85 Cal.Rptr.2d 752].) A Senate bill analysis refers specifically to the unanimous vote requirement under the "[a]rguments in support" of the legislation. (Sen. Com. on Public Employment & Retirement, Analysis of Sen. Bill No. 440 (2003–2004 Reg. Sess.) as amended July 17, 2003, p. 3.) Furthermore, the Legislature adopted the bill over the specific objections of local governments to the unanimous vote requirement. (*Id.* at p. 4.) Opponents of the legislation contended that "a unanimous decision of the board of supervisors or city council . . . is nearly impossible to achieve and question[ed] whether it will survive subsequent constitutional challenges on the same basis that SB 402 was found unconstitutional." (*Ibid.*) We cannot say with confidence that Senate Bill 440 would have been adopted in the absence of this provision. (*McMahan v. City and County of San Francisco, supra,* 127 Cal.App.4th at p. 1374.) We therefore conclude that the word "unanimous" may not be severed from the remainder of the legislation.

### III. *Section 1299 et seq. Impermissibly Delegate to the Arbitration Panel the Power to Interfere with County Money and to Perform Municipal Functions.*

Although our conclusion that section 1299 et seq. violate section 1, subdivision (b) of article XI would ordinarily be sufficient to resolve the matter before us, we will nevertheless consider the County's arguments under section 11, subdivision (a). In *Riverside*, the Supreme Court admonished that we must view the two provisions as a whole and not in isolation. (*Riverside, supra,* 30 Cal.4th at pp. 290–291, fn. 6.) Like the Supreme Court, we will

therefore also examine the constitutionality of section 1299 et seq. under section 11, subdivision (a). (*Riverside*, at pp. 291–295.)

The County claims that the statute violates section 11, subdivision (a) of article XI in four ways. First, it interferes with county money because the arbitration panel may potentially require the County to pay higher salaries than it chooses. Second, the statute allows the arbitration panel "to perform the municipal function of determining compensation for County employees." Third, the unanimous vote requirement of section 1299.7, subdivision (c) interferes with the majority voting process of the County's board of supervisors. Fourth, because the decision of the arbitration panel becomes binding after five days under section 1299.7, subdivision (b) unless the board of supervisors rejects it by unanimous vote of all the members, the statute interferes with the board's ability to comply with the requirements of the Ralph M. Brown Act, Government Code section 54950 et seq.

SCLEA responds by arguing that there can be no violation of section 11, subdivision (a) of article XI because under the statute "the governing body's power to perform municipal functions is not delegated at all." In SCLEA's view, section 1299 et seq. do not transfer any power to enact decisions to the arbitration panel, because the panel's decision "does not have the force and effect of law until such time as the governing body chooses to accept the panel's decision." Indeed, SCLEA goes so far as to claim that the statute does not require the County to take *any* action it does not choose to take.

We agree with the County's first two arguments. We conclude that section 1299 et seq. impermissibly delegate to the arbitration panel the power to interfere with county money and to perform the municipal function of setting the compensation of county employees. We therefore need not reach the County's remaining contentions.

A. *History and Purpose of Section 11, Subdivision (a)*

Section 11, subdivision (a) originated as article XI, section 13, of the Constitution of 1879. (Grodin et al., The California State Constitution (1993) p. 198.) It was intended primarily to prevent the Legislature from interfering in the financial affairs of local governments, but its prohibitions extend to other forms of interference as well. (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 500 [96 Cal.Rptr. 553, 487 P.2d 1193].) It was also directed at preventing the Legislature from creating special commissions that would assume authority over local functions, such as the operation of a city fire department, municipal waterworks, or public enterprises such as

parks and streets. (See *Howard Jarvis, supra,* 40 Cal.App.4th at p. 1368.) As we explain below, the authority section 1299 et seq. grant to the arbitration panel to set the terms and conditions of employment for county employees is inimical to the purposes of section 11, subdivision (a) of article XI, because such power intrudes significantly upon the functions of local government. (See *Taylor v. Crane* (1979) 24 Cal.3d 442, 453 [155 Cal.Rptr. 695, 595 P.2d 129].)

### B. *The Legislature Has Delegated the County's Powers to a Private Body.*

■ We first confront SCLEA's argument that the County's power to perform municipal functions has not been delegated at all. This argument is belied by the language of the statute itself. (See *Howard Jarvis, supra,* 40 Cal.App.4th at p. 1373 [rejecting argument that authority established by Legislature did not levy tax where authority's enabling statute specifically provided for levying and collection of tax by authority].) The statute unequivocally places the authority to decide disputed compensation issues in the hands of the arbitration panel at the behest of the employee organization. (§§ 1299.4, subd. (a), 1299.6, subd. (b) ["The *arbitration panel . . . shall decide* on the disputed issues . . . ." (italics added)].) Moreover, at the conclusion of a five-day period after its issuance, the arbitration panel's decision "shall be binding on all parties, and, if specified by the arbitration panel, be incorporated into and made a part of any existing memorandum of understanding as defined in Section 3505.1 of the Government Code."[16] (§ 1299.7, subd. (b).) In *Riverside,* the Supreme Court concluded that these provisions constituted a legislative delegation of local authority to a private body. (*Riverside, supra,* 30 Cal.4th at p. 294.)

### C. *The Governing Body's Power to Reject the Arbitration Panel's Decision Does Not Cure the Unconstitutional Delegation.*

The remaining question is whether the employer's opportunity to reject the arbitration panel's decision under section 1299.7, subdivision (c) through a unanimous vote of all members of the governing body somehow means that a delegation has not occurred. (See *Howard Jarvis, supra,* 40 Cal.App.4th at p. 1374.) We find this case analogous to *Howard Jarvis.* There, the court held that the fact that the Legislature had conditioned the delegation of taxing

---

[16] We note that the arbitration panel's power on this point arguably exceeds that of a public agency acting under Government Code section 3505.4. Under that provision, once impasse has been reached and applicable impasse resolution procedures exhausted, a public agency that is not required to proceed to interest arbitration may implement its last, best, and final offer. However, in such cases, the public agency "shall not implement a memorandum of understanding." (Gov. Code, § 3505.4.)

power to the Fresno Metropolitan Projects Authority on voter approval did not make the delegation an act of the voters rather than an act of the Legislature. (*Id.*, at p. 1375 ["the act of the Legislature is subject to ratification by the people. It remains, nonetheless, the act of the Legislature."]; cf. *Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 15 [97 Cal.Rptr. 431] [unconstitutional delegation of authority to adopt forest practice rules not cured by statutory amendment permitting counties to adopt more stringent regulations].)

 Similarly, the mere fact that the arbitration panel's decision will not become binding if the County's board of supervisors is able to muster the necessary unanimous vote to reject it does not mean that no delegation has occurred. The decision of the arbitration panel is in no sense an act of the governing body. Indeed, the statute does not require the governing body to ratify the arbitrators' decision before it becomes binding. The decision can become binding without any legislative action at all. (See § 1299.7, subd. (b) [decision shall be binding unless governing body acts to reject it].) The decision will become binding even if a majority or supermajority of the governing body votes to reject it, if either one member votes against rejection or is absent or abstains. (§ 1299.7, subd. (c) [rejection requires "unanimous vote of all the members of the governing body"].) In such cases, the decision on the disputed issues will have been made by an arbitration panel created by the Legislature, and not by the County's elected governing body. Thus, even as amended by Senate Bill 440, the statute still offends section 11, subdivision (a) of article XI because it "has impermissibly delegated to a private body—the arbitration panel—the power to interfere with county money (by potentially requiring the county to pay higher salaries than it chooses) and to perform municipal functions (determining compensation for county employees)."[17] (*Riverside, supra*, 30 Cal.4th at p. 291.)

### D. Cases Involving Statutes Allowing Local Governments the Option to Establish Agencies Are Inapposite.

Amicus curiae PORAC attempts to analogize this case to *The Housing Authority v. Dockweiler* (1939) 14 Cal.2d 437 [94 P.2d 794] (*Dockweiler*), but

---

[17] SCLEA also contends that "the Legislature is empowered to delegate, as long as adequate procedural safeguards are in place." The cases SCLEA cites in support of this contention are wholly inapposite, because they concern the Legislature's delegation of its *own* powers, not those of local governments. (*King v. Meese* (1987) 43 Cal.3d 1217, 1233–1235 [240 Cal.Rptr. 829, 743 P.2d 889] [statute that merely permitted private insurers to decide whom they would insure and at what price was not unconstitutional delegation of Legislature's authority]; *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1410 [22 Cal.Rptr.3d 393] [Legislature's delegation of authority to promulgate building standards]; *International Assn. of Plumbing etc. Officials v. California Building Stds. Com.* (1997) 55 Cal.App.4th 245, 248, 254 [64 Cal.Rptr.2d 129] [same].)

that case is distinguishable. There, the Legislature had enacted a statute authorizing counties and cities to establish independent housing authorities. (*Id.* at pp. 443–444.) The Supreme Court rejected the argument that the Legislature had improperly delegated county or municipal functions. (*Id.* at p. 463.) The key to this holding was the fact that the statute left the decision on whether to create a housing authority entirely up to the local governing body. The court therefore concluded "that it is the local governing body, and not the legislature, that confers upon the authority the right to exercise its functions." (*Ibid.*)

*Dockweiler* and similar cases are therefore properly understood as holding section 11, subdivision (a) of article XI "inapplicable to statutes which are dependent, for their effectiveness, upon local option." (Background Study Relating to Article XI: Local Government, *supra*, at p. 328; accord, *City of Whittier v. Dixon* (1944) 24 Cal.2d 664, 667 [151 P.2d 5] [no improper delegation where local governing body, not Legislature, conferred authority to act on parking place commissioners]; *California Assn. of Retail Tobacconists v. State of California* (2003) 109 Cal.App.4th 792, 828–829 [135 Cal.Rptr.2d 224] [no violation of art. XI, § 11, subd. (a) where act authorized creation of local county commissions because counties could establish commissions "if they so choose"].) Here, in contrast, the arbitration panel has been created by an act of the Legislature alone, and local governments have no authority to refuse to submit to arbitration once it is invoked by an employee organization. (§ 1299.4, subds. (a), (b).)[18]

DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue commanding respondent superior court to (1) vacate the portions of its order of August 1, 2008, granting SCLEA's petition to compel arbitration and ruling in SCLEA's favor on the cross-motions for judgment on the pleadings as to the first cause of action in the County's cross-complaint for declaratory relief, and (2) enter a new and different order denying SCLEA's petition to compel arbitration and granting the County's cross-motions for judgment on the pleadings as to the first cause of action in the County's cross-complaint. The County is entitled to recover its costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

---

[18] We deny the parties' requests for judicial notice.

The previously issued stay shall dissolve upon issuance of the remittitur.

Simons, J., and Stevens, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied July 8, 2009, S173345.

---

*Retired Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.